### Charles P. Avery v. Chauncey S. Payne.
### Chauncey S. Payne v. Charles P. Avery.

*Partition between tenants in common: agreement between them inconsistent therewith.*—The statute—*Comp. L* §4616—which provides that "all persons holding lands as joint tenants or tenants in common may have partition thereof in the manner provided in this chapter," does not prevent such tenants from making contracts, modifying or limiting their otherwise incidental right to a partition, either at the time of creating the joint interests, or afterwards.

Where the owner of lands conveyed an undivided moiety to another, for a sum of money less than its value, to be paid from the proceeds of sales to be made thereof, and secured by mortgage on the lands, and a part of the consideration consisted in the services of the purchaser in taking charge of and selling the joint property under a contract between them, and a principal part of the seller's security for the purchase price and for the efficiency and fidelity of the purchaser in the management and sale of the property, consisted in the control he would have over the sales of the purchaser's interest, it was held that so long as the seller was not guilty of refusal to perform his part of the contract, or of any default which would relieve the purchaser from the obligation to perform, or prevent his performance, the latter was not entitled to partition.

Mortgages executed by the seller on his undivided half, not alleged or shown to have interfered with sales, or otherwise to have operated to the prejudice of the purchaser, will constitute no reason for partition.

*Costs.*— Bill and cross bill. In the court of chancery the latter was dismissed and the former sustained. On appeal to the Supreme Court both bills were dismissed, but, under the circumstances each party left to pay his own costs in the Court below.

*Heard, July 6th, 7th, 8th, 10th, 11th, and 12th. Decided, October 18th.*

Appeal in chancery from Genesee circuit.

The original bill was filed by Avery for a partition of certain lands situate in the county of Genesee, of which the bill alleges complainant and defendant are tenants in common, each owning an undivided moiety; that complainant became such owner and tenant in common by a deed of conveyance from defendant Payne and wife on or about the 19th day of February, 1856; that complainants at the time of such conveyance gave back to Payne a mortgage, accompanied by his bond, to secure the payment of twenty - five thousand dollars out of the proceeds of sales of the said premises according to the terms and conditions specified in said bond; that a portion of this sum had already been paid, complainant consenting that whenever the partition should be made, the mortgage for so much as should be then due should be a charge and lien upon the parts or portions which should be set off to complainant.

The bill also states that defendant Payne has since said conveyance to complainant incumbered his undivided half of certain pieces or parcels of the premises, by three sev-

eral mortgages to Crane, Youngs and Newton, which the bill prays may, after such partition, be a charge only on the lots or parcels allotted to said Payne. The bill in other respects is an ordinary bill of partition.

The answer of Payne admits the execution of the deed from himself and wife to complainant, but avers that it was intended to convey the undivided half of only parts and not the whole of the premises purporting to be conveyed by it, that it was drawn by complainant, and that complainant was at the time acting not only for himself but as the attorney and legal adviser of defendant, and that defendant reposed special confidence in him, as such, and that he would draw the same according to the understanding and agreement between them, and that complainant assured him that the deed was so drawn; that he, relying upon such assurance, executed it without particular examination, and without taking other advice than that of complainant, who was the only legal adviser of defendant in that business. Defendant avers that he has since ascertained that complainant fraudulently, and with intent to cheat defendant, drew the deed so as to embrace more land than complainant was entitled to according to the terms of the previous agreements and understanding between them, and more than he had agreed to convey. Claims that the deed is for this reason void: that previous to the execution of the deed, it was agreed between the defendant and complainant, substantially, that defendant would sell and convey to complainant an undivided half of certain parcels of land which, with certain other parcels, are embraced in said deed, for the sum of $25,000, to be paid to defendant by complainant out of the proceeds of sales of the said undivided half; the full amount of such proceeds to be paid over to the defendant as fast as sales could be made until the $25,000 should be fully paid; and that in case for any reason any portion of such proceeds should be retained by complainant, he should pay

to defendant interest on such portion till the same should be paid to defendant; and that, as a portion of the land was productive, complainant should pay defendant, annually, five hundred and sixty dollars, as the estimated though not the real amount of the yearly income expected to be derived from the undivided half of such productive portion: and that it was further at the same time agreed, that complainant should, without charge, take the oversight and management of the whole of the lands, an undivided half of which was to be conveyed as aforesaid, and should attend to the selling thereof, and to the collection of the purchase money, and of rents, income and profits of such parts as were productive, and in case of the absence of defendant, or whenever complainant should be desired by the defendant to do so, he should attend to and transact the business of the defendant generally, whether legal or otherwise, and should. in all things and at all times protect, guard and secure the rights and interests of defendant, as well in all dealings and business transactions with the complainant himself, or in which he was concerned, as with all others — all which was to be without charge — complainant being attorney and counsellor at law, and defendant being a layman and entirely unlearned in law: that said deed was executed for the purpose of carrying out said agreement: that the bond and mortgage executed by complainant for the $25,000 were apparently intended, and by defendant understood, to secure to him the performance of said agreement: that they were drawn by complainant; that defendant did not at the time read said bond and mortgage, but was assured by complainant they were in accordance with said agreement, and took them in the full confidence they were so, but that the bond was afterwards found to be defective and was taken back by complainant and corrected, and not returned, but instead thereof complainant afterwards delivered to defendant another bond. This bond was in the penalty of

$50,000, conditioned for the payment of $25,000 out of the proceeds of the sales of the lands described in the mortgage accompanying the bond, as follows: one half of such proceeds, whether the same should be in cash or securities, to be delivered over to said Payne, his executors, &c., to be indorsed as payment on said bond: said Avery to be charged with interest upon securities while they remained in his hands, before delivery to defendant, and seven per cent interest on the cash proceeds which should so remain in his hands, to be paid as above provided out of said proceeds. In taking such securities said Avery to exercise ordinary prudence, and none to be considered indorsable thereon unless they have been taken upon sales fairly made and in good faith; said bond is also conditioned that "the sum of five hundred and sixty dollars each and every year until this bond is fully paid (that sum being the estimated value of the yearly rents and income of the productive property embraced in said mortgage), is to be added to the principal of this bond, to be paid as above provided, with interest on said sum to be computed from the first day of April each year, commencing with April 1st, 1857. But in case of the sale of said Avery's interest in any of the productive property aforesaid, a deduction is to be thereupon had, from the said $560, of an amount equal to the annual interest on such sale, and thereafter the balance only, after such deduction, is to be carried to said principal, and paid as above provided, with interest on such balance." Defendant avers that he did not read this bond, but heard it read by complainant, who stated it to be correct and in accordance with their agreement, and from the assurances and explanations of complainant in regard thereto, the defendant (not being capable, as complainant well knew, for lack of legal learning and knowledge, to determine the legal effect of the language used in the condition of said bond, and having the most perfect confidence in the

legal ability, competency, honesty and integrity of complainant, and relying upon him as his legal adviser) without exercising his own judgment, took it for granted and believed that the bond was substantially in accordance with the real agreement of the parties, and defendant took the bond in lieu of the other which had been taken back by complainant and retained by him.

If the Court shall find the deed valid, and that said bond and mortgage are not in accordance with the real agreement between the parties, defendant submits that they should be reformed and corrected by the Court, so as to conform to said agreement. He admits that certain payments have been made, but that said payments, deducting the interest, do not amount to over one thousand dollars. He denies that the premises are susceptible of partition as prayed for in the bill, and insists that it would be ruinous to defendant for partition of the premises to be made.

A replication was put in to this answer.

The defendant Payne also filed a cross bill, setting forth and enlarging upon the various matters of defense stated in his answer, and praying, among other things, that the agreement between him and Avery, the deed given by him, and the bond and mortgage given back by Avery, may be corrected and reformed by the decree of the Court so as to conform to the real agreement between the parties. As the Court found this bill not sustained by the testimony, it is unnecessary to set it forth, or to give any synopsis of the answer. And it is believed that the foregoing synopsis of the pleadings in the original case is sufficient, in connection with the opinion, for a full understanding of the points decided by the Court.

The two cases were heard together in the Court below, and a decree made dismissing the cross bill, and granting partition as prayed by the original bill. Payne appealed to this Court.

*L. Walker, W. Newton* and *G. V. N. Lothrop,* for the appellant, insisted, among other things, that partition would not be granted in opposition to the agreement of the parties, where they, or either of them, have assumed duties and obligations inconsistent with the unrestrained right to enjoy the property in severalty:—*Dart on V. & P.* § 434, *Colman v. Colman,* 19 *Penn.* 100; *Brown v. Lutheran Church,* 23 *Penn.* 495; *Holmes v. McGee,* 27 *Mo.* 597.

*J. G. Sutherland, C. P. Avery* and *A. B. Maynard,* contra, argued that a tenant in common was entitled to partition as a matter of right:—*Comp. L.* § 4616; *Smith v. Smith,* 10 *Paige,* 470: that the testimony showed Payne to have violated the spirit of the agreement between the parties in refusing to consent to proper sales, and that the incumbrances he had placed upon his interest were such an impediment to sales as prevented Avery having the full benefit of his ownership without partition.

CHRISTIANCY J.:

[After remarking upon the great and unnecessary length of the record, and the large amount of irrelevant testimony taken on both sides.]

Voluminous and excursive as the evidence is, it fails to throw any light upon some of the more important questions presented by the pleadings, and upon several others it is too slight to lead to a satisfactory conclusion. What were, in fact, all the features or provisions of the real agreement between the parties upon which the conveyance was to be made to Avery, and what was the real nature of some of the subsequent transactions between them in reference to the correction of the bond, &c., is left by the evidence in painful uncertainty. The knowledge of the facts, except as they appear by the written evidence, seems to have been mainly confined to the parties themselves. Answers under oath were waived, and the testimony

was taken prior to the act of 1861, allowing parties to be witnesses. A few hours examination of the parties would doubtless have thrown more light upon these cases than all the testimony which has been taken.

It is however clear from the pleadings and proofs, that Avery paid no pecuniary consideration at the time for the undivided half of the lands conveyed to him by Payne and wife, which he asks to have set off to him in partition, nor did he agree to pay any pecuniary consideration therefor, except from the proceeds of the sales to be made of the conveyed lands; that the price agreed to be paid from such proceeds was twenty - five thousand dollars; that the lands thus sold were, with a good title, worth some ten thousand dollars more than this sum; that Avery did not, under the conveyance which was executed to him, assume the risk of the title which was then in litigation, as that conveyance was by warranty, and it does not appear that Payne was not perfectly able to respond in damages if the title had failed (and we judge from the evidence his means were ample for this purpose). Whatever other services Avery was to render, or whatever other consideration Payne was to receive, it is clear that, as a part and a very material part of the consideration, without which Payne would not have consented to make the conveyance, Avery was by the agreement to take charge of and manage the common property after the conveyance (the half still belonging to Payne as well as that to be conveyed), and to make sales thereof without charge; that Payne would not be bound to assent to any sale which he might deem disadvantageous, though requested by Avery; that Payne relied, and, by the agreement between them, had a right to rely upon the common interest which Avery would have with him as a tenant in common, and the control he, Payne, would still retain over the sales (when called upon to deed) as his security for Avery's efficiency and fidelity in the management and sale of the property. We

think it also very clear that this common interest, and the power the arrangement would give Payne over the sales to be made of the common property, constituted a valuable security in his hands, as it would enable him to exercise to some extent an influence to prevent improvident sales of Avery's half, from the proceeds of which he was to receive his twenty - five thousand dollars purchase money. There is nothing in the evidence tending to show that Payne would have consented to make the conveyance without the security thus afforded; in other words, we can see nothing in the evidence to induce the belief that he would have been willing to have sold to Avery one half in value of the property in severalty, for the same consideration in other respects. That he would not for this consideration have thus sold in severalty, nor, if he supposed there was to be a partition, before the purchase money at least was paid, we think abundantly appears from the evidence.

To grant a partition, and allow Avery's portion to be set off in severalty before the purchase price is paid, while a large portion of the property remains unsold (which, for aught that appears, Payne is still anxious to sell), and before Payne has by his own default or otherwise released Avery from his obligations in this respect, would be to deprive Payne of a large portion of the consideration he was to receive for the land.

The conveyance was therefore made to Avery under and in pursuance of an agreement which was inconsistent with a present right of partition [on his part; and no partition can be granted in the present aspect of the case, unless the statute — Comp. L. § 4616 — is imperative in such a case, or unless Payne, by his refusal to carry out his part of the agreement, or by some clear default on his part, deprived Avery of some portion of his rights under the agreement, or prevented his performance of it.

We think the statute can only be considered imperative

in its application to ordinary joint tenancies or tenancies in common, where the right of partition is left to result as an ordinary legal incident of such tenancy; and that it was never intended to interfere with contracts between such tenants modifying or limiting this otherwise incidental right; nor to render it incompetent for parties to make such contracts, either at the time of the creation of the tenancy or afterwards.

We have not been able to discover any satisfactory evidence of Payne's refusal to perform his portion of the contract, nor of any default on his part which would relieve Avery from the obligation to perform, or prevent his performance. It is true that, after a certain time, the relations of the parties ceased to be friendly, and they seem mutually to have ceased approaching each other upon business matters, and sales ceased to be made. But it does not appear that Payne ever wrongfully refused upon request to join in any proper sale, negotiated by Avery. And for aught that appears Avery might have continued to make sales of the common property as before, until the whole was disposed of.

On the part of Avery, however, it was strongly urged upon the argument that the three mortgages executed by Payne, to Crane and to Youngs in November, 1858, and to Newton in May, 1859 (sometime after all sales had ceased to be made), operated as a breach of the spirit of the agreement between the parties, and put it out of the power of Avery to make sales, as he otherwise might have done: and that he can not therefore derive the full benefit of his purchase without a partition.

However well founded this position might be under certain circumstances, there are several conclusive reasons why the giving of the mortgages can not be allowed to confer a right to partition in the present case.

*First.* The complainant in the original bill has not placed his claim to a partition on any such ground, but

relies wholly upon the incidental right springing from a tenancy in common. To have enabled him to claim a partition on the ground now suggested, he should have set forth or relied upon the agreement in his bill, and alleged the mortgages and their effect in preventing or embarassing sales, as a breach of the agreement by Payne; perhaps also a request to Payne to procure the discharge of the mortgages. The question, whether the mortgages had in fact operated to prevent or retard sales, would then have been in issue, and might have been decided by proof. But no such question has been put in issue, and no such proof was therefore admissible. When Payne's answer was put in setting up the agreement, the bill should have been so amended as to present this point, if intended to be relied upon.

But *Second*. Had the bill contained these allegations, there is no proof to sustain them, or to show that the mortgages, in fact, proved detrimental to Avery in any respect.

And *Third*. While the Court can see that it would depend upon circumstances whether the mortgages would or would not operate to prevent or embarrass sales, they can not without proof judicially know what were the circumstances during the period in question, and can not therefore judicially say whether the mortgages did, in fact, thus operate. There may have been no opportunity during that period to make sales, had there been no mortgages; and purchasers may have been found willing to purchase at the full value of the property, assuming the mortgages as part of the purchase money. Partition should therefore be denied.

As to the cross bill, upon a full examination of the evidence, we are satisfied that Payne has failed to prove the original contract to be such as he has alleged in his bill, and that he has not, by his proof, shown sufficient

AVERY v. PAYNE.

ground for cancelling or reforming the contract, or any of the subsequent papers.

The decree of partition granted in the Court below must be reversed, and both the original and the cross bill must be dismissed without prejudice.

Though Payne succeeds upon the appeal, yet as he fails upon his cross bill which called for independent, affirmative relief, and has introduced the larger share of irrelevant testimony, and is more responsible for the useless length of the record, it is but just that he should sustain a portion of the costs. Each party must therefore pay his own costs of these causes in the Court below, and Payne must recover his costs on the appeal.

The other Justices concurred.