WILLIAM H. EBERTS ET AL. V. AARON C. FISHER ET AL.

*Lease—Insurance and taxes—Appraisal of improvements—Tenants-in-common—Partition.*

1. A lease provided that the lessee should keep the property insured and should assign the insurance policy to the lessor. *Held,* that in equity no formal written assignment was needed, and if there was none the stipulated insurance would be deemed to be held in trust.

2. A lessee's omission to pay a paving assessment could not properly be treated as a breach of his contract, if it arose from a question as to the validity of the assessment, and if he paid it when its validity was settled.

3. A lessee of land agreed to put up a building thereon, the value of which was to be appraised at the expiration of the lease, when the lessor, after proper notice, could have the building on paying its value, or the lease should be extended. *Held,* that an appraisal of the building was unnecessary where no notice was given of a purpose to terminate the lease.    And an appraisal of the land by mutual consent was equivalent to an agreement that the lease should be continued, and should not be interfered with by partition where the parties to the lease were tenants-in-common.

4. A tenant-in-common may enter into such agreements as to estop himself from enforcing his right to a partition of the premises.

Appeal from the Superior Court of Detroit. (Chipman, J.) June 13.—June 25.

BILL to terminate lease and for partition. Complainants appeal. Reversed.

*Henry M. Campbell* and *Alfred Russell* for complainants.

*E. Y. Swift* and *Chas. M. Swift* for defendants.

CHAMPLIN, J. In 1860 Phillis Eberts was the owner in fee of lot No. forty-four, in section eight of the Governor and Judges' plan of the city of Detroit, then vacant and unoccupied, and on the 12th day of March of that year she executed a lease of the premises to one Lansing for twenty years at a ground rent of $1050 for the first ten years, and $1200 for the next ten years, upon the covenants and conditions following:

1. That the lessee should pay, as the same should become due, the rent aforesaid quarterly on the first days of August, November, February and May.

2. That the lessee should pay, as the same should become due, all special and general taxes and assessments, and annually exhibit on demand to the lessor the vouchers for the payment of the same.

3. That the lessee should keep the buildings to be erected on the lot insured in at least $5000 by policies to be taken in the name of the lessor, or assigned to her, and should annually produce and exhibit on demand to the lessor the certificate of renewal of said insurance.

4. That the lessee should erect on the premises leased, within six months from May 1, 1860, a block of well-built, good and substantial brick stores, not less than four stories high, besides basement.

5. In case of loss or damage by fire, the building should be repaired or rebuilt within one year thereafter by the lessee, or his heirs or assigns.

6. If the lessor should, by the neglect of the lessee, have to pay any tax or assessment or premiums of insurance, the

amount so paid should be considered as a part of the rent, and be due and payable the next quarter-day thereafter.

7. That within the last year of the lease, at a time to be mutually agreed upon by the parties, their heirs or assigns should, at the request of either of them, each select a free-holder of the city of Detroit as an appraiser, which two should select a third, who should appraise the value at that time of the lot, separate from all improvements thereon, and also the cash value of the buildings and the improvements; which appraisal shall be in writing, in duplicate, and delivered to each party, their heirs and assigns; and thereupon the lessor should at her option have said improvements on paying the appraised value thereof on the termination of the lease, of which option she should give the lessee at least sixty days' notice before the termination of the lease, and if no such notice should be given, then the lease should be extended ten years from the first day of May, 1880, at an annual rent of five per cent. upon the appraised value of the lot, without the improvements, subject to all and singular the other conditions of the lease, and at the expiration of the thirty years if extended to that time, all the buildings and improvements of every kind and character should be and become the property of the lessor, her heirs and assigns.

8. That said buildings should be kept in repair.

There was a provision for re-entry in case of condition broken, or non-performance of any of the covenants. The term was to commence on the 1st day of May, 1860, previous to which time—namely, March 19, 1860—Lansing assigned the lease to Elam Fisher and Aaron C. Fisher.

Phillis Eberts died on the 18th day of April, 1876, leaving a last will, by which she bequeathed this property to Herman F. Eberts, William H. Eberts, Marie Louisa Eberts, John Meldrum Eberts, Robert Jerome Eberts, Charles H. Eberts, William Eberts, Nancy Waddell, Henry Eberts, Catharine Taylor and Frances Smith. After the death of Phillis Eberts and before the filing of the bill in this suit, Herman F. Eberts assigned his interest in the property to Hiram Walker. Rob-

ert Jerome, Charles H., William and Henry Eberts, Catharine Taylor, Nancy Waddell and Frances Smith conveyed their interest to defendants Aaron C. Fisher, and Aaron C. Fisher and John H. Van Schoick, executors of the last will of Elam Fisher, deceased; Elam Fisher having died previous to the commencement of suit. The record does not disclose the date of the conveyance to defendants. These transfers leave the complainants the owners of four-elevenths, and the defendants the owners of seven-elevenths, of the property leased. There was no notice given by the lessor or her representatives of the option provided for in the lease, and on the 2d day of April, 1880, appraisers who had been mutually chosen in the manner provided for in the lease appraised the land without the improvements at $52,000.

On the 19th day of June, 1880, the complainants filed this bill, setting up the state of the title and the lease, and averring breaches thereof, substantially as follows: (1) That the defendants failed to pay a special paving assessment on said property, for the paving of Woodward avenue, becoming due July 1, 1878, whereupon said lease became terminated, and the complainants' right of possession accrued; that the defendant Elwood purchased said property at a sale thereof to pay said assessment, March 15, 1880, for the term of ninety-nine years. (2) That the defendants failed to keep the building insured in the name of the lessor or her heirs or assigns, or to assign the policies to her or them, and have not kept the building insured for the benefit of the lessor, her heirs or assigns, in any amount whatever. (3) That the defendants have failed to keep the building in good repair; that they have suffered the roof to become so defective that the water leaks through in large quantities and does great injury to the building, and that, owing to the defective roof and defective eaves, the water runs down the rear walls of the building, and by soaking into the mortar between the bricks and freezing there, has so damaged the walls that the water penetrates during storms, runs into the interior and causes great damage. (4) That the defendants failed to have a proper appraisal made containing an estimate of

the cash value of the building separate and apart from the land.

The bill charges that the defendants are in possession, and because they hold the title in fee to seven-elevenths, and are tenants in common with the complainants, the latter cannot re-enter and occupy, and their only remedy is in equity by partition. The complainants ask a decree that the lease has become terminated, and that their right to the possession or occupation has accrued, and for a partition.

The defendants answered, and proofs were taken. On the hearing in the court below a decree was entered declaring the ownership and title to the land as alleged in the bill; also declaring the leasehold interests in the premises, and the parties who were the owners thereof; adjudging the lease to be in full force and effect, and that it had not been determined and ought not to be determined by reason of any of the alleged breaches of the conditions thereof by the defendants, set forth in the bill of complaint; and dismissing the bill as to the alleged forfeitures, and decreeing partition of the premises between the parties complainant and defendant.

The defendants failed to pay a special assessment for paving. The proof shows that it was considered by some property owners who were assessed, as illegal, and its validity was contested in the courts. It was found to be valid and then the defendants paid the assessment and the lien was discharged. The insurance was at first assigned to the lessor, but after a year or two the practice was discontinued, apparently by tacit consent of all parties. No complaint seems to have been made because the insurance was not assigned. The buildings were in fact kept insured for a much greater amount than five thousand dollars, and in a court of equity, that amount would be held in trust for the lessor, and treated as assigned without any formal written assignment.

The proof shows that the appraisement was made by the mutual arrangement of the parties, and that no notice was given by the lessors of their option to terminate the lease and pay the appraised value of the improvements. It was therefore unnecessary to appraise the value of such improve-

ments, and the appraisement as made cannot be held to constitute a breach of the condition of the lease. The appraisers fixed the amount upon which the lessees should pay five per cent. as rental for the succeeding ten years, and that fully accomplished the purpose of this covenant of the lease. Neither do we feel justified in holding that there has been such a breach of the covenant to repair as would operate as a forfeiture of the rights of the lessees under the lease. Upon a careful examination of the proofs we should affirm that part of the decree of which complainant complains. But we think the court below erred in decreeing a partition.

As a general rule it is a matter of right for a tenant in common of lands to have partition. But this rule is not of universal application. A party may enter into such agreements with his co-tenant as to estop him from enforcing the right of partition. This principle was recognized and applied in *Avery v. Paine* 12 Mich. 540; and when in this case, instead of terminating the lease at the end of twenty years, the complainants and defendants, by mutual consent, obtained an appraisal of the premises, it was in effect an agreement that the premises should be held by the lessees ten years longer under the terms of the lease; and in view of the relation of the parties to the fee and reversion, it was as plainly implied that such relations should not be interfered with by partition, without mutual consent, so long as the terms of the lease were kept and performed by the lessees. Counsel for complainant admit that unless the lease has been terminated by breach of the conditions thereof, a partition is neither desirable nor asked for. Both parties concede that a partition cannot be made without sale, and that a sale subject to the lease would sacrifice the rights of the parties.

The decree of the Superior Court awarding partition must be reversed, and the bill of complaint dismissed with costs of both courts in favor of the defendants.

The other Justices concurred.