[No. 224. Decided November 19, 1891.]

## H. E. HOUGHTON AND ALICE HOUGHTON, *Respondents*, v. D. J. CALLAHAN AND AGNES CALLAHAN, *Appellants*.

CONTRACT—CONSTRUCTION—OWNERSHIP OF LAND—PARTITION—ABANDON-
MENT OF CONTRACT.

Where, by agreement between plaintiff and defendant, certain land upon which plaintiff held an opinion was to be purchrsed and paid for by the defendant and deeded to the latter in his own name, the profits of the transaction, after refunding purchase money and interest, to be equally divided between them, the defendant is entitled to continue to hold the land until it has all been sold to third parties, and the plaintiff has not such an interest in the land as to entitle her to a partition thereof, but can claim only an equal share of the profits from its sale.

The fact that defendant removed certain contracts and papers relating to the sale of portions of said land from plaintiff's office, and revoked certain powers of attorney made to plaintiff authorizing the conveyance of defendant's property in Spokane county, does not show an abandonment of such contract, nor a denial of plaintiff's rights in relation thereto, and under such circumstances there can be no decree for partition of the property.

*Appeal from Superior Court Spokane County.*

The facts of this case are stated in the opinion.

*Jones, Belt & Quinn,* for appellants.

*Turner & Graves,* for respondents.

The opinion of the court was delivered by

Hoyt, J.—Alice Houghton, one of the plaintiffs, had an option on a certain piece of land near the city of Spokane, which option was about to expire, when she called upon D. J. Callahan, one of the defendants, who was her brother-in-law, and stated to him that she was unable to raise the money to purchase the land before her option would expire, and such negotiations were had between them that said defendant purchased the land, and took a deed therefor in his own name, but for the benefit of himself and said Alice Houghton. No formal written agreement between said defendant and said plaintiff was ever entered into, but their relations to the land in question, and the manner in which the same was to be held by said defendant, were set out in a letter written by said defendant to the plaintiff, H. E. Houghton, and endorsed by the other plaintiff, the said Alice Houghton. Said letter was as follows:

"St. Paul, Minn., July 17, 1887.

"My Dear Houghton: I telegraphed you last night in behalf of Alice, that she would take the Cannon land, i. e., N. W. ¼, sec. 28, 160 acres, at $8,800; terms $3,000 cash, balance in one year. This telegram is the result of an agreement made between Alice and myself for the purchase of this land, which I sincerely hope will be advantageous to both of us.

"In lieu of any other written agreement between us, I shall, in this letter, state to you our understanding and agreement, as clearly as possible. Alice can read it before mailing and countersign it, provided it meets her wishes.

"Now, in consideration of the fact that Alice states to me that the purchase will in her estimation yield a large profit within six months, or, in any event, prior to the time when the last payment falls due, and in further consideration of the fact that you seem to be of the same opinion, as expressed in late letter to her, and inasmuch as Alice has not now the money necessary to take a half interest in

the land with me and pay for it, I have made her the following proposition:

"I will purchase the land myself in my own name, on terms hereinbefore stated, and give my individual notes and mortgage for the unpaid balance, due on or before one year, at ten per cent, provided you can't get it at eight per cent. The profits of the transaction, after first refunding to me all the purchase money and ten per cent per annum interest on one-half of said purchase money, *i. e.,* on $4,400, shall be equally divided between Alice and myself, provided that said profits shall in any event net me individually not less than ten per cent per annum on the $8,800 invested. Now, as to the manner of selling, best time to sell, price at which to sell, the propriety of platting into lots, selling thus or as an entire tract; all this I expect to leave largely to your and Alice's judgment, but I am, of course, to be entitled to all of your information in the matter, and all sales are to be subject to my approval. In consideration of the above offer, I expect Alice to use her best endeavors to make some money for us out of the transaction, and, aided by your good judgment and advice, it seems to me that we ought to make the thing pay. Of course, I don't care to be obliged to pay up the whole amount, unless we shall, on consultation, consider it wise to do so. The idea is to sell before the final payment is due; still, if after visiting Spokane I consider it advisable, I shall take up the mortgage and pay the full amount in cash.

"Now, for the purpose of facilitating sales, I propose to give you a power of attorney to act for me, and if you will draw up one and send it to me, I will execute it and return it to you for record. You can also have deed made in my name (I, of course, assume that you know the title is perfect), and also please prepare the mortgage and note and send them to me for my signature.

"I herewith enclose a draft for $3,000, payable to your order, with which to make the first payment to me.

"By the way, I wonder if you could arrange with Mr. Cannon to give a partial release of mortgage in case we should desire to sell forty or twenty acres at a time, provided we pay the proportionate amount due on said tract;

for instance, if in case of a sale by us of forty acres we should pay him one-fourth of amount due on mortgage. This would be a desirable arrangement for us."

And it is from the interpretation thereof that we must arrive at the rights of the respective parties to the land in question, for although there are many allegations in the complaint which would tend to broaden the agreement between said Alice Houghton and the said D. J. Callahan so as to show that the rights of said Alice Houghton therein were greater than would appear from said letter, and in the answer some allegations which would tend to show that her rights were even less than would be gathered therefrom, yet the proof on the one hand and the other was of such a nature that it seems to us that the rights of neither party could be fairly said to have been extended beyond the intent and meaning of the memorandum made by the parties in the shape of said letter. And the only aid which we are enabled to derive from the oral testimony as to the arrangement between the parties is, that therefrom the circumstances and conditions surrounding them at the time said memorandum was made are fully disclosed and to a certain extent aid in its interpretation. It is claimed on the part of the plaintiffs that under said memorandum of agreement the said Alice Houghton and the said D. J. Callahan became the owners of said tract of land as tenants in common, subject to the lien of said Callahan thereon for the purchase price. On the other hand it is claimed on the part of the defendants that said Callahan became the absolute owner of the land subject only to the condition that the said Alice Houghton should be entitled to one-half of the profits, derived from the sale thereof, over and above the purchase price.

If the contention on the part of the defendants as to the contract between said defendant D. J. Callahan and Alice Houghton is correct, then it must follow that the

11—3 WASH.

decree of the lower court partitioning the property cannot stand, for in that case said Alice Houghton never became entitled to any interest in the land itself, but only in the profits of the transaction. The proper interpretation of said memorandum is somewhat difficult, as it is not drawn with the care and attention to details that are usual in instruments which seek to establish a trust in lands, but when we interpret it in the light of all the surrounding circumstances, and the relation of the parties to each other, and to the land in question, we are inclined to the opinion that said contention of defendants is correct, and that the intention of the parties in entering into the transaction was that said Callahan should continue to hold the title to the land until it had all been sold to third parties, and that the profits only were to be divided. The whole agreement seems to us to harmonize better with such contention than with that of plaintiffs; especially in view of the fact that said defendant D. J. Callahan was the only person liable to loss in the transaction. Whatever might have been the result of the venture, the said plaintiff, Alice Houghton, could not be the loser, for if loss was suffered it must all fall on said Callahan. This would not be a reasonable condition of the contract if as contended by plaintiffs they were the joint purchasers of the land, for in that event the reasonable and ordinary condition in that regard would have been that each should share the loss as well as the profit, whereas, if we look upon the defendant Callahan as the purchaser in his own right, it might have reasonably been provided that he should take all chances of loss, but that in view of the information which he had received from said Alice Houghton, and her assignment to him of the option held by her, and of the services to be rendered by her in selling the property, that he should allow her to share in the profits. But even if such be not the construction of the contract between the

parties, and if it be conceded that the said Alice Houghton did, by virtue of the arrangement under which it was purchased, become entitled to an interest in the property, still we are satisfied that under all the conditions, as evidenced by the proofs offered in this case, plaintiffs were not entitled to have said land partitioned at the time they commenced this action.    It seems to us clear that it was not the contemplation of the parties that so soon as enough of the land had been sold to repay said defendant Callahan the money advanced by him that the remainder of the tract should be divided.    A contrary intention seems to pervade the entire memorandum of agreement, and we cannot come to any other conclusion therefrom than that the parties intended that the title to the land should remain in the said defendant Callahan until it was sold, and that each of the parties to the agreement were entitled to the services of the other party free of charge in making sales of said property, and that it was expected by each of said parties that they would act together and aid each other in realizing on the investment.

If this be the construction of such agreement, then it would follow that even although said Alice Houghton had an interest in the land from the date of its purchase, yet she would not be entitled to have it divided unless the other party to the agreement had so acted towards her or said property, as to show his abandonment of the contract in question, or his denial of her rights in relation thereto. And this leads us to inquire what was done by said Callahan, as shown by the proof, that would tend to justify the said plaintiffs in bringing this suit.    Only two things are alleged and proven which could tend in the most remote degree to justify such course on the part of the plaintiffs. One is that the contracts and other papers relating to the sale of portions of the land in question were taken from the office of plaintiff Alice Houghton by defendant D. J. Callahan,

and left with the cashier of one of the banks of said city, but we can see nothing in this act which the defendant had not the right to do. The contracts and papers mentioned were as much his property as they were the property of the plaintiffs, and even if he had taken them entirely into his own possession we cannot see that by so doing he would have violated any of the rights of the plaintiffs, and when instead of doing so he thus placed them in a bank where they would be safe and accessible to both parties, such action on his part entirely negatives any inference of intention to deprive plaintiffs of their rights therein.

The other act relied upon is the revocation of certain powers of attorney made to the plaintiff H. E. Houghton, by which he was authorized to convey the property of said defendants in Spokane county, it being claimed on the part of the plaintiffs that the making of said powers of attorney was a part of the contract entered into between said defendant D. J. Callahan and said plaintiff Alice Houghton at the time the property was purchased, and that therefore the revocation thereof was a violation of said contract. We are not satisfied that defendant Callahan, in the memorandum hereinbefore referred to, contracted as a part of the consideration of said agreement that he would make such powers of attorney, as in view of the reservation clearly made in said memorandum that all sales must be "subject to my approval," it would seem that the proposition to make powers of attorney was simply proposed as a matter of convenience and a probable way in which the business could be easily transacted. But even if we could find that by such memorandum said defendant Callahan did agree to make to said Houghton powers of attorney which would authorize him to deal with and manage the property in question, still the act of defendant Callahan in revoking the powers of attorney, which he did, was justifiable. The proof clearly shows that they were not only powers of at-

torney which authorized said Houghton to deal with the property in question, but that by the terms thereof he was authorized to deal with any and all of the property of said Callahan in said county.  This being so he would of course at any time have the right to revoke the same, and before he could be considered in default for non-compliance with that part of the agreement which provided for the making of said powers of attorney there must be a demand made upon him by the plaintiffs that he execute such special powers of attorney as would authorize dealing with the land in question.  This is especially true as by the memorandum in question the powers of attorney which he proposed to execute in aid of the transaction between the parties were to be prepared by plaintiff Houghton and were so prepared by him, and if he prepared them so that they were broader than required by the terms of the contract, he could find no fault if the defendant upon ascertaining such fact revoked the same, and the least that he could do before claiming any forfeiture of the contract by reason of such revocation would be to draw up and tender for execution proper powers of attorney.

It seems clear from this review of the proofs in the case that the defendant D. J. Callahan has done nothing in violation of the terms of the contract entered into between him and said plaintiff Alice Houghton, and that as it was the intention of the parties that the property should be held by him until sold, there can be no partition thereof. When there has been any denial of the rights of the plaintiffs in the property in question, or any refusal to approve of and confirm reasonable contracts for the sale of the whole or any portion thereof, it is probable that the plaintiffs may be entitled to relief, but until there have been acts of this kind on the part of defendants there can be no division of the property.

That portion of the decree appealed from must be re-

versed, and the cause remanded with instructions to pro-
ceed upon the other portions of the decree according to
law.

ANDERS, C. J., and SCOTT, DUNBAR and STILES, JJ.,
concur.