HENRY OLIVER, APPELLEE, V. JAMES F. LANSING ET AL., APPELLANTS.

FILED MARCH 3, 1897. No. 7094.

1. **Partition.** Where a cause is fairly within the law authorizing a partition, the right to partition is imperative and absolutely binding upon courts of equity. In such a case the right of partition is a matter of right and not of mere grace.

2. ———: DISTRIBUTION. The mere fact that inconvenience or difficulty of making distribution, or even probable loss, is involved in making partition, in nowise affects the absolute right to have partition.

3. ———: RIGHTS OF LESSEE. Where real property leased for a term of years is owned by several persons as tenants in common, both of the rents and the reversion, partition upon the petition of one of the tenants in common may be had, and, in case of a sale being thereby rendered necessary, the lessee will become a tenant of the purchaser of the rents and reversion.

APPEAL from the district court of Lancaster county. Heard below before STRODE, J.   *Affirmed.*

Cases cited by counsel are referred to in the opinion.

*Pound & Burr, J. W. Deweese,* and *F. M. Hall,* for appellants.

*Webster, Rose & Fisherdick, contra.*

RYAN, C.

In his petition, filed in the district court of Lancaster county, Henry Oliver alleged his ownership of an undivided one-half of certain described lots in the city of Lincoln, and that the defendant, James F. Lansing, was the owner of the other half.   There was described an incumbrance on the property and the plaintiff alleged that the defendant had collected certain rents and profits of the real estate which he should account for, and there was a prayer for partition, and, as an incident of such partition, for an accounting as to said rents and profits. In his answer the defendant alleged that he had fully accounted for and paid all rents and profits by him collected.   Further answering, the defendant alleged that plaintiff and said defendant had built the "Lansing Opera House" on the lots described in the petition, and that prior to entering upon said enterprise the said litigants had entered into a contract with one Ed A. Church, by the terms of which they had leased to Church the said opera house for the term of five years.   A copy of the contract referred to was attached to the answer, and, as it becomes necessary, will be hereinafter described.   The defendant concluded his answer with the following averments: "This defendant further alleges the fact to be that the agreement between the plaintiff and this defendant was that their joint ownership and control of the building known as the 'Lansing Theater,' and their copartnership in the building, managing, and operating the

same, was to continue for a period of five years. This
defendant further alleges the fact to be that neither the
plaintiff nor this defendant are entitled to the possession
of the opera house proper of said building until the expi-
ration of said lease. And defendant further alleges the
fact to be that the plaintiff is not entitled to a partition
of said property until the expiration of the lease with
the said Ed A. Church for a period of five years. The
defendant further alleges the fact to be that the said
Ed A. Church is now in possession of said property and
occupying the same under and by virtue of the terms of
his said lease, and is a proper party defendant to this
action, and defendant therefore asks that said Ed A.
Church be brought in and made a defendant in this suit,
and that upon the final hearing of this action the said
partition suit may be dismissed at the plaintiff's cost,
and for such other and further relief as this defendant is
in equity entitled to receive." There was a supplemental
answer filed, by which there were merely amplifications
of the above matters urged as defenses; that is to say,
it was alleged that but for the consideration that the
relationship established with Church was to exist for five
years, the construction of the opera house would not have
been contributed to, or entered upon, by the defendant.
In addition to the allegations of this nature there were
averments of sums expended in the common enterprise
and a prayer for an accounting in respect thereto. The
affirmative matters appearing in the answer were denied
by plaintiff's reply. There was a decree in favor of the
plaintiff that a partition should be made as prayed, and,
in conformity with a finding upon an accounting, there
was a judgment in plaintiff's favor in the sum of $330.05.
In the decree it was specially found, upon sufficient evi-
dence to sustain the finding, that there was no copart-
nership agreement between Lansing and Oliver as to the
real property partitioned, and that there was no agree-
ment restrictive of the right of either party to a parti-
tion. By the terms of the decree it was provided that

the rights of Ed A. Church should be preserved to him, and the partition was subject to his rights under his contract with plaintiff and defendant.

The questions presented by the appeal of the defendant shall receive consideration as outlined by his answers. The contract between the parties to this action and Ed A. Church was made before the building of the opera house. Its provisions affecting this controversy were, in effect, that Church was to have the exclusive management and control of the opera house for a period of five years from the time when it would be ready for public use, during which period he was to determine for what purpose the opera house was to be used and the kind of entertainments therein to be given. The relations of Lansing and Oliver as party of the first part, and Church as party of the second part, to the agreement between said parties was defined in the following language: "Second—For his services in managing said opera house, said party of the second part shall receive five (5) per cent of the gross receipts and income of said opera house of all entertainments and performances therein, after deducting from said receipts the amount paid to the attractions showing at said house. Third—The party of the second part shall receive all income arising from said opera house, and on the day or morning next succeeding the day or night during which said opera house shall have been used or occupied for any purpose the said party of the second part shall render to the party of the first part a true account of the gross proceeds arising from the use of said opera house for the preceding day or night, and after deducting from the said sum the amount to be paid the performing company, and five per cent of the remainder thereof, he shall immediately pay the balance to the party of the first part. Fourth—All expense of stationery, correspondence, postage, telegraphing, and telephoning for the purpose of securing entertainments and performances in said opera house shall be paid by the party of the second part, and said party of the first part shall

keep said opera house in good condition and repair. Sixth—At the expiration of the period hereby limited the party of the first part shall pay to the party of the second part the actual expense to which the party of the second part may have been in securing performances and entertainments in the future, such expense to be limited to correspondence, stationery, postage, telegraphing, and telephoning."

The appellant insists that the appellee was not entitled to maintain an action for partition: First, on account of the relations between the plaintiff and the defendant in relation to the property; and second, on account of the relation, on the one hand, of the parties to this suit and Mr. Church, on the other hand, with respect to the subject-matter thereof. Under the first head it was urged, and probably with truth, that Mr. Lansing would never have entered into an agreement for the construction of the opera house if he had expected that inside of five years Mr. Oliver would apply to the courts for partition. It is probably true that if Mr. Oliver could have anticipated the outcome he would not have embarked in the joint enterprise. The case is one where parties with perhaps the best of intentions toward each other find that they cannot act in harmony. The question presented under such circumstances is whether, notwithstanding this unforeseen disagreement, both tenants in common must remain such for the period in contemplation when that relation was assumed between them. In support of the contention of the appellant there were cited several adjudicated cases, the aptness of which we shall now consider.

From the opinion in *Eberts v. Fisher*, 54 Mich., 294, appellant quoted these sentences: "A party may enter into such agreements with his co-tenant as to estop him from enforcing the right of partition." "And in view of the relation of the parties to the fee and reversion it was as plainly implied that such relations should not be interfered with by partition without mutual consent." These

independent sentences state a principle which might be utilized by appellant if the facts under consideration in the case in which they were used did not so radically differ from those involved in this case. Eberts was the owner of a vacant lot, which he leased for a term of twenty years. For the first ten years the rent was fixed at $1,050; for the remainder of the term at $1,200. It was provided in the lease that within the last year of the lease appraisers should be chosen, by whom the value of the lot should be appraised separate from the improvements (which improvements the lessee was bound, meantime, to place upon the lot), and thereupon the lessor might, at her option, have the improvements on payment of the appraised value at the termination of the lease. The right to exercise this option was dependent upon sixty days' notice to that effect, to be given before the termination of the lease. If no notice should be given the lease was to continue for another ten years. There was no notice given by the lessor of the option, though within the time allowed for that purpose appraisers were appointed and duly acted as such in making the appraisement. It was under this condition of affairs that the lessor sought by partition to become the owner of the improvements. The sentences quoted were used in the discussion of this attempt to violate the express provisions of the lease, and in that case were very proper, but they are not applicable to the facts of this case.

In *Avery v. Payne*, 12 Mich., 540, Payne, the owner of certain real property, entered into an agreement with Avery, his attorney, whereby Avery undertook to dispose of said property for their common benefit, subject to Payne's approval of the sales in each instance. In pursuance of this agreement Payne conveyed to Avery an undivided half interest in the real property which was the subject-matter of the contract. Avery, instead of disposing of this property, began an action for its partition, and it was held that under the circumstances partition had been improperly made by the inferior court.

57

In *Peck v. Cardwell*, 2 Beav. [Eng.], 137, four persons purchased land under an agreement that it should be laid out in streets and sold in lots, according to a specified plan. All the parties died. The purchase money had all been advanced by two of the four persons indicated, in whose favor mortgages had been made by the other two on their respective interests. One of these mortgagors made the two mortgagees and another person his executors and trustees, giving them power to sell, but not to make purchases. It was held that as between the representatives of the deceased persons there could be no partition, because the parties were not mere tenants in common of land as to portions of which some were entitled partly as trustees and partly for their own benefit.

In *Coleman v. Coleman*, 19 Pa. St., 100, land containing iron ore was held in common by two persons, and the heirs of another, a former owner. By the said two persons and the guardian of the minors who were owners of an interest it was agreed in writing, under seal, that certain persons named should make partition of a part of the property, but that the ore banks should remain as an undivided tenancy in common, and that none of the parties should interfere with or interrupt the others at any mine hole by them opened and occupied for the purpose of raising iron ore. In amicable actions of partition the furnaces and forges were allotted, but as to the iron ore banks and hills it was recommended that they should still remain undivided. The report containing this recommendation was duly confirmed by the court in 1787, and each party took possession of the parcel assigned him and himself, or those claiming under him, continued to hold the same until 1851, when suit was brought for the partition of the land on which was situated the ore bed. It was held that the agreement was a defense, not only on account of the judgment by which it had been ratified, but because the covenant ran with the land, if not for the purpose of enabling an heir or assignee to sue, at least for that of rebutting a suit brought in derogation

of the restraint which it imposed. The partition was held not permissible, because the partition previously had, had been in effect of profits of the mine hills, for the soil was of no value. The ore was the object to be secured, and the partition of this was impracticable, for no one could say how it was distributed. For the reason that the value of the several parts of an ore bed was not ascertainable, it was held in *Conant v. Smith*, 1 Aikin [Vt.], 67, that it was not apportionable, and that under such circumstances resort should be had to a court of chancery for a decree which would authorize its sale as an entirety and the apportionment of the proceeds.

Just how far the case of *Haughton v. Callahan*, 3 Wash., 158, falls short of justifying appellant's contention is illustrated by the first paragraph of the syllabus, which is in the following language: "Where, by agreement between plaintiff and the defendant, certain land upon which plaintiff held an option was to be purchased and paid for by the defendant and deeded to the latter in his own name, the profits of the transaction, after refunding purchase money and interest, to be equally divided between them, the defendant is entitled to hold the land until it has all been sold to third parties, and the plaintiff has not such an interest in the land as to entitle her to a partition thereof, but can claim only an equal share of the profits from its sale."

In *Baldwin v. Humphrey*, 44 N. Y., 609, certain persons as trustees received a conveyance of real property, and it was held that no partition of it could be had, for a division of the property necessarily involved a breach of trust.

In *Anderson School Township v. Milroy Lodge*, 130 Ind., 108, partition was sought of a house of which the three different stories were owned by distinct individuals, and it was held that the relief prayed must be denied, for it necessitated the cutting off of the means of access to the two stories above the ground; moreover, it was held as consistent with the same theory that the house was as

completely partitioned as in its nature it was possible to make partition of it.

*Appeal of H. B. Latshaw*, 122 Pa. St., 142, involved the same principle as was involved in *Baldwin v. Humphrey, supra*, and this principle is thus stated in the syllabus: "Ordinarily when a deed is made to trustees for a church or other charity the fee vests at once in the association, for, the trust being raised only for the purpose of taking and passing title, it is immediately executed; but not so where the trust is active and continuing, as where it is created for the support of a special use."

In *Story v. Palmer*, 46 N. J. Eq., 1, the reason why partition would not lie was indicated by the language of the syllabus: "A court of equity will not decree a partition urged by one *cestui que trust*, and resisted by another, where its effect will be to override and put an end to an active trust and thus defeat the testator's intention, if the trustees stand ready to execute the trust in good faith." It was said, furthermore, that if the trustees refused to perform they could be compelled to do so by a court of equity.

In *Brown v. Lutheran Church*, 23 Pa. St., 495, trustees of real estate for educational and religious purposes, it was held, could not create a new use or convey the estate for purposes inconsistent with those for which they held it. A burying ground being a part of the property held in trust for the use of two societies, it was held, should not be partitioned, for it could not properly be divided by lines, and to sell it to be used for ordinary purposes would be repugnant to every sense of decent propriety.

The case of *Hill v. Reno*, 112 Ill., 154, was cited by appellant, and in its syllabus we find the rules laid down as follows: "Where a case is fairly brought within the law authorizing a partition, the right to partition is imperative and absolutely binding upon courts of equity. They are not clothed with such discretion as that, under a given state of facts, they may grant the relief or refuse it and yet commit no error. To invoke this equitable

remedy is a matter of right, and not of mere grace." In
the fifth paragraph of the same syllabus it is said: "In
the event that a partition could be effected only through
the instrumentality of a sale of the premises and a distri-
bution of the proceeds of such sale among the several
parties in interest, the mere fact that difficulties may arise
in the adjustment of the distribution, or inconvenience,
or even possible losses, result from the change of the rela-
tion of the parties to the estate by reason of the sale,
will in no way affect the absolute right to have partition."
The consensus of most of the cases cited by appellant
cannot be better stated than was done in this case, and,
therefore, assuming that appellant's counsel have cited it
because of that fact, we shall quote therefrom this lan-
guage: "Notwithstanding the rule as stated [in effect as
in the above quotation from the syllabus] is almost uni-
versally conceded, nevertheless, there are certain well
recognized modifications of it. For instance, if an estate
should be devised or conveyed, to two or more, upon the
express condition that it should not be subject to parti-
tion, or if several tenants in common, or joint tenants,
should covenant between themselves that the estate
should be held and enjoyed in common only, equity would
not, in the absence of special equities, award a partition
at the suit of some of the parties, against the objections
of the others; and where the title of the complainant is
doubtful, or, in other words, where he does not show a
clear right to partition, it will not be awarded. So where
several persons have purchased land with a view of sell-
ing it out into lots for building ground, according to a
certain plan, and it was agreed among them that neither
of them should dispose of his share, except in a certain
manner, it was held, in a suit by the representatives of
one of the parties against the survivors, that the agree-
ment barred the right to partition. (*Peck v. Cardwell*, 2
Beav. [Eng.], 137. See, also, in this connection, *Cubbage
v. Franklin*, 62 Mo., 364; *Selden v. Vermilya*, 2 Sandf. [N.
Y.], 568.) The principle which seems to underlie all

these cases is that equity will not award a partition at the suit of one in violation of his own agreement, or in violation of a condition or restriction imposed upon the estate by one through whom he claims. The objection to partition in such cases is in the nature of an estoppel." This quotation leaves out of consideration the class of cases wherein partition has been denied of ore beds, but as there is nothing of this nature in this case, the omission is of little practical consequence. There has been neither pleaded nor shown an express condition of limitation by contract. There is just as complete a failure to disclose any trust which would be violated by awarding partition. It was said in the case of *Hill v. Reno, supra,* that mere hardship would not be sufficient to prevent resort to partition, for partition is a matter of right, and these propositions are abundantly sustained by the books. (Freeman, Cotenancy & Partition, sec. 433; *Smith v. Smith,* 10 Paige Ch. [N. Y.], 470; *Howey v. Goings,* 13 Ill., 95; *Parker v. Gerard,* 1 Amb. [Eng.], 236; *Holmes v. Holmes,* 2 Jones Eq. [N. Car.], 334; *Stedman v. Weeks,* 2 Strob. Eq. [S. Car.], 145; *Wiseley v. Findley,* 3 Randolph [Va.], 261.)

It seems, however, that the appellant, to some extent, bases his opposition to the right of appellee to partition upon the assumption that there was a partnership between plaintiff and defendant in respect to the building and management of the opera house. There is not found in the record any evidence of a partnership relation, and the district court found specially that no such relation existed. If there had been a partnership, that fact alone would not have been sufficient reason for denying partition. (*Collins v. Dickinson,* Hayw. 2d ed. [N. Car.], 275; *Hughes v. Devlin,* 23 Cal., 502.) We conclude from a full consideration of the citations made on behalf of both litigants, and from such independent research as we have been able to make with reference to this proposition, that the relations of the plaintiff and defendant to the opera house, and between themselves, were not such as would serve to modify the generally accepted rule that

partition between tenants in common is the absolute right of either tenant.

We shall now consider the relations of the appellant and appellee towards the opera house property as affected by their contract with Mr. Church. By the appellant it is insisted that his contract was one of lease, therefore that the right of possession during the term is solely in Mr. Church, from which consideration it is claimed necessarily to result that no partition can be had between Mr. Oliver and Mr. Lansing, because neither of them is in possession. It may, for the purposes of this investigation, be conceded that Mr. Church, for the term of five years, has the right of exclusive possession of the opera house. This being thus conceded, let us consider the citations of appellant directed to the deduction that therefore partition cannot be maintained. The first case cited is that of *Hunnewell v. Taylor*, 6 Cush. [Mass.], 472, but this is of little value, for the court was governed by a provision of the statutes of Massachusetts that a petition for partition "may be maintained by any person who has an estate in possession, but not by one who has only a reversion or a remainder." In *Tabler v. Wiseman*, 2 O. St., 207, it was held as long as there was in existence the widow's dower right, the heirs could not partition their interests, because no right of present possession existed in their favor. These cases are all that tend to sustain the contention of the appellant,—the latter quite directly so. As opposed to this contention we shall now review other cases which seem quite in point.

In Illinois the statute provides for partition on the petition of any one or more of the persons interested; and that the petition shall set forth the rights and titles of the parties in interest, including tenants for years, for life, by courtesy, or in dower, and of persons entitled to the remainder or reversion. It was held that as this statute contained nothing requiring that the applicant should have an estate entitling him to be in possession, and as it clearly contemplated bringing before the court

the owner of the life estate, it must be construed as authorizing a reversioner or remainder-man to maintain a suit for partition against the owner of the remaining undivided interest in reversion or remainder, although the whole premises were subject to an unexpired life estate. (*Scoville v. Hilliard*, 48 Ill., 453; *Hilliard v. Scoville*, 52 Ill., 449.)

A like construction was given a similar statute in Minnesota in a case where the possession was held by a lessee. (*Cook v. Webb*, 19 Minn., 167.)

In New Jersey partition may be had among remainder-men. (*Smith v. Gaines*, 38 N. J. Eq., 65.)

In *Phillips v. Johnson*, 14 B. Mon. [Ky.], 172, the real property had been subject to the life estate of Mrs. Standeford. Partition between the heirs, after her death, was resisted by one who claimed possession under a lease from her and insisted that no partition could be had until his possession had been legally terminated. Referring to the rights of the heirs, Marshall, J., used this language: "To say that the chancellor is ousted of his ordinary jurisdiction to make partition between the parties thus entitled, and must send them to a court of law to establish their title and get possession because the tenant in possession, though by his own showing he holds under their title, and is bound to surrender to it, says the land is his, that he claims and holds adversely, and that he cannot be ousted but by the verdict of a jury, would be to subject an important and beneficial jurisdiction to the mere ignorance or perversity of the tenant in possession, and to allow the substantial ends of justice to be defeated by a shadow of technicality."

In *Hunt v. Hazelton*, 5 N. H., 216, on a petition for partition, where the petitioner alleged that he was seized in fee as a tenant in common with the respondents, it was held that a plea alleging that one of the respondents had a lease of the interest of the petitioner for a term of years, which had not expired, was no answer to the petition.

In *Woodworth v. Campbell*, 5 Paige Ch. [N. Y.], 518, the syllabus was as follows: "Where lands leased for a term of years are owned by several persons as tenants in common, both of rents and of the reversion, a bill for partition may be sustained; but a sale of the lands under the decree in partition must be made, subject to the rights of the lessees, who by the sale will become the tenants to the purchaser of the rents and reversion."

It is probable that the requirements of the rule as to possession to sustain partition is stated as favorably as possible to appellant in section 446 of Freeman, Cotenancy & Partition, as follows: "It is a general rule,. prevailing in England without exception, and also throughout the majority of the United States, that no person has the right to demand any court to enforce a compulsory partition unless he has an estate in possession—one by virtue of which he is entitled to enjoy the present rents or possession of the property as one of the cotenants thereof."

Section 802 of the Code of Civil Procedure is in the following language: "When the object of the action is to effect the partition of real property among several joint owners, the petition must describe the property, and the respective interests and estates of the several owners thereof, if known. All tenants in common or joint tenants of any estates in land may be compelled to make or suffer partition of such estate or estates in the manner hereafter prescribed."

The conclusion reached by the courts, respectively, in *Scoville v. Hilliard, supra*, and *Cook v. Webb, supra*, was in each instance influenced by a statute much resembling our own, and it is our conclusion therefrom, and from the other cases above cited, on general principles, independent of statute, that there was properly a partition awarded between appellant and appellee notwithstanding their contract with Ed A. Church.

The finding of the court as to the condition of the accounts between the appellant and appellee, in view of the

great number of items and of the interest which might properly be allowed, was as nearly correct as could be expected. We have examined these items sufficiently to be satisfied that no injury had been done Mr. Lansing, and we do not feel called upon to make a more critical analysis, merely to be able to state this fact with mathematical exactness. The judgment of the district court is in all things

AFFIRMED.