WATSON MURDOCK *et al.*

*v.*

SARAH M. MURDOCK.

*Opinion filed December 20, 1905.*

1. ANTE-NUPTIAL CONTRACTS—*rule where provision for wife is disproportionate to amount of husband's property.* If the provision for the intended wife in an ante-nuptial contract is disproportionate to the means of the intended husband, the husband and those claiming under him have the burden of proving that the intended wife, at the time she executed the contract, had full knowledge, or reasonable means of knowledge, of the nature, character and value of the intended husband's property.

2. SAME—*when provision for wife is disproportionate to husband's means.* A provision for the wife consisting of a small house in which to live and a widow's award valued at $1350 and $1500 in cash is disproportionate to the husband's estate, consisting of personal property valued at $35,000, even though he had only $10,000 worth of personal property at time the contract was made, where he also had at that time reserved a life estate in certain lands conveyed to his children, which amounted to $4000 a year and which proved to be his most valuable asset.

3. SAME—*what does not supply proof of knowledge by wife of husband's means.* The facts that the intended husband and wife had lived near each other for many years and were well acquainted, and that the intended husband was reputed to be a man of wealth, do not supply proof of knowledge by the intended wife of the nature, character and value of the intended husband's property. (*Yarde* v. *Yarde,* 187 Ill. 636, distinguished.)

4. SAME—*intended wife not bound by relative's uncommunicated knowledge.* Knowledge by a son-in-law of the intended wife as to the actual financial standing of the intended husband is not binding upon the intended wife, in the absence of proof that this knowledge was communicated to her.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Douglas county; the Hon. W. C. JOHNS, Judge, presiding.

JOHN H. CHADWICK, THOMAS W. ROBERTS, ECKHART & MOORE, and P. M. MOORE, guardian *ad litem* for Oma Campbell, for plaintiffs in error.

I. A. BUCKINGHAM, and ROY F. HALL, for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed in the circuit court of Douglas county on the 11th day of September, 1902, by Sarah M. Murdock against the heirs-at-law of John D. Murdock, deceased, to set aside an ante-nuptial contract bearing date July 25, 1892, entered into between the said Sarah M. Murdock and John D. Murdock; also certain deeds made by John D. Murdock to the plaintiffs in error, conveying to them, in fee simple, eight hundred and seventy-five acres of farm lands situated in said county, (subject to a life estate reserved therein to said John D. Murdock,) bearing date shortly prior to the marriage of the said Sarah M. Murdock and John D. Murdock, and for the assignment of dower in said lands. Answers and replications were filed, and the case was referred to the master in chancery of said county to take the proofs and report his conclusion as to the law and the facts. The master took the evidence and filed a report recommending that the bill be dismissed for want of equity. The chancellor sustained exceptions to the master's report in so far as it held the complainant was barred of her distributive share in the personal estate of the said John D. Murdock, deceased, but overruled the same as to his findings and recommendations with reference to the conveyances of the farm lands and entered a decree sustaining the deeds from John D. Murdock to the plaintiffs in error, and held that the defendant in error was not entitled to dower in said farm lands, but decreed her to be entitled to her distributive share, as widow of said John D. Murdock, in his personal estate, the same as if the said ante-nuptial agreement had not been executed,—from which decree, so far as it was adverse to their interests, the plaintiffs in error prosecuted an appeal to the Appellate Court for the Third Dis-

trict, where the decree of the circuit court was affirmed, and a writ of error has been sued out from this court to the Appellate Court to review the judgment of that court.

It appears from the evidence that on the 26th day of July, 1892, John D. Murdock and Sarah M. Bentley were married at Murdock, a small village in Douglas county, where they had both resided and been intimately acquainted with each other for many years.  John D. Murdock at the time of the marriage was seventy-six years of age and was a widower and had six children,—two sons and four daughters,—all adults, and who resided in their own homes; and Sarah M. Bentley was fifty years of age, was a widow and had two children,—a son and a daughter,—both of whom were adults.  John D. Murdock died intestate in the said village on February 9, 1902.  At the time of the marriage Mrs. Bentley had personal property, consisting of wearing apparel and household goods, of the value of not to exceed $200, and was possessed of a dower and homestead estate in the house and lot where she lived, which had belonged to her first husband, and which house and lot were not worth to exceed $1000, and she had no prospects of obtaining any other property, by inheritance or otherwise.  At the time of the engagement between John D. Murdock and Mrs. Bentley, which preceded their marriage some two months, Murdock owned eight hundred and seventy-five acres of farm lands situated in Douglas county, worth at least $60 an acre, and which produced an annual rental of not less than $4000. He also had personal property, consisting of cattle, horses, grain, farm implements, money and notes and mortgages, of at least the value of $10,000.  His sons and daughters were opposed to Murdock marrying Mrs. Bentley, and Mrs. Bentley advised Murdock to convey his farm lands to his children prior to the marriage, with a view, if possible, to reconcile said children to their marriage, and, pursuant to such advice, a few days prior to the marriage, Murdock, by separate deeds, conveyed all of said farm lands to his sons

and daughters in substantially equal portions, reserving a life estate to himself in said lands. About the time Murdock executed said deeds to his children he called upon his solicitor, Charles W. Woolverton, who resided in Tuscola, in said county, with a view to have him prepare an ante-nuptial contract between himself and Mrs. Bentley, and on the 25th of July Murdock and Mrs. Bentley went to Tuscola to execute the said agreement. There is no direct evidence in the record that the execution of an ante-nuptial agreement was considered or its terms agreed upon by and between Murdock and Mrs. Bentley until they met at the law office of Woolverton on July 25, 1892. Woolverton died in 1895, and the mouths of Woolverton and Murdock being closed by death and Mrs. Murdock being an incompetent witness, the only evidence as to what took place at the time of the execution of said ante-nuptial agreement is found in the testimony of J. W. Hamilton, who at the time of the execution of said agreement was a clerk in the law office of Woolverton. He testified that on the 25th day of July, 1892, Murdock and Mrs. Bentley came to Woolverton's office substantially together; that the agreement had been prepared by Woolverton and written out by Hamilton upon the typewriter and was ready for the signatures of the parties; that at the request of Woolverton he read over to Murdock and Mrs. Bentley, in the presence of Woolverton, the agreement, paragraph by paragraph, and that the instrument in all its parts, and its legal effect, were fully explained to the contracting parties and discussed between themselves and with Woolverton, and after a discussion as to the terms and legal effect of the instrument it was executed by the contracting parties and they left the office. At the time the agreement was signed, however, nothing was said in regard to the nature, character or value of Murdock's property, and there is no evidence in this record that Mrs. Bentley had any knowledge of the nature, character and value of Murdock's property at the time the agreement was executed or at any

time prior to her marriage to Murdock, or that Mrs. Bentley knew that Murdock, in the deeds conveying the real estate to his children, had reserved a life estate to himself, except such knowledge as she may be deemed, in law, to have had by reason of the fact that she had resided in the same village in which Murdock resided for a number of years prior to their marriage, was well acquainted with Murdock during · that time and that Murdock was reputed to be a wealthy man, and that her son-in-law, with whom she was on friendly terms and who also lived in the village, was well acquainted with Murdock and was familiar with his financial standing.

The ante-nuptial agreement in question is long and need not be set out in full in this opinion. It will, however, be found incorporated in full in the Appellate Court opinion filed in this case. It, in brief, provided that John D. Murdock released all his interests in Mrs. Bentley's estate in case he survived her, in consideration that she released all her interests in his estate in case she survived him, (except that of homestead and widow's award,) in which event, in addition to said homestead and widow's award, she was to receive $1500 in cash from his estate within sixty days from the date of his death.

The defendant in error, in support of the decree and judgment of the lower courts, makes two contentions: First, that at the time Mrs. Bentley signed said ante-nuptial agreement she did not understand its legal effect, but supposed that by the terms thereof, upon the death of Murdock, in addition to her homestead and $1500 in cash, she would receive one-third of his personal property remaining after the payment of his debts, as a widow's award; and second, that the provision made for her in said agreement, in view of the amount of Murdock's property, was wholly inadequate for her support as his widow, and that as she was not fully informed by him of the nature, character and value of his property at the time she executed said agreement or prior to her marriage, it is not binding upon her and is not a bar

to her distributive share of the personal estate of said Murdock, and that in view of such inadequacy the burden of proof rested upon the plaintiffs in error to show that she executed said agreement with full knowledge of the character, nature and value of the property which Murdock had at the time she executed the agreement, and that said plaintiffs in error failed to sustain such burden of proof.

As to the first contention, the proof shows the agreement was read to Mrs. Bentley and fully explained to her at the time she signed it, and as she is a woman of some education and of apparent intelligence, and there is no claim she was induced to execute the agreement by fraud or circumvention, we think, if that contention was all there was in the case, she ought to be held to be bound by the terms of the agreement.

As to the second contention, as has before been said, there is no proof in this record that the defendant in error, at the time she signed the agreement or at any time prior to the marriage, was informed or had any knowledge whatever as to the nature, character or value of Murdock's personal property or that he had retained a life estate in said farm lands, unless such knowledge is to be imputed to her, as a matter of law, from the facts that she lived in the same town with and was well acquainted with her intended husband, that he was reputed to be a wealthy man, and that her son-in-law, who lived in the same village and with whom she was on friendly terms, was familiar with his financial condition. The rule in this State is well settled that a man and woman who contemplate marriage may by an antenuptial contract, if there is a full knowledge on the part of the intended wife of all that materially affects the agreement, settle their property rights in each other's estates. Yet it is held, if it appear that the provision made for the intended wife is disproportionate to the means of the intended husband, a presumption is raised in her favor that the execution of the agreement was brought about by a designed

concealment of the amount of his property by the intended husband, and that the husband, or persons claiming through him, in order to sustain the agreement, have cast upon them the burden of proof to show that the intended wife, at the time she executed the agreement, had full knowledge of the nature, character and value of the intended husband's property, or that the circumstances were such that she reasonably ought to have had such knowledge. (*Achilles* v. *Achilles,* 137 Ill. 589; *Taylor* v. *Taylor,* 144 id. 436; *Achilles* v. *Achilles,* 151 id. 136; *Hessick* v. *Hessick,* 169 id. 486; *Hudnall* v. *Ham,* 183 id. 486; *Yarde* v. *Yarde,* 187 id. 636.) In the *Taylor case,* on page 445, the court said: "Parties to an ante-nuptial contract occupy a confidential relation toward each other. (*Kline's Estate,* 64 Pa. St. 124; *Pierce* v. *Pierce,* 71 N. Y. 154; *Rockafeller* v. *Newcomb,* 57 id. 86.) While they may lawfully contract with each other where there is full knowledge of all that materially affects the contract, yet where the provision secured for the intended wife is disproportionate to the means of the intended husband it raises the presumption of designed concealment, and throws the burden upon those claiming in his right to prove that there was full knowledge on her part of all that materially affected the contract. * * * The burden here was, therefore, upon appellants to prove, by satisfactory evidence, that the appellee had knowledge of the character and extent of her intended husband's property and of the provisions and effect of this instrument, or, at all events, that the circumstances were such that she reasonably ought to have had such knowledge at the time this instrument was executed."

The foregoing language was quoted with approval in the *Achilles* and *Hessick cases,* and was said to be a correct statement of the settled law of this State. This being the law, the question then arises, was the provision made for the defendant in error by the agreement disproportionate to the estate of the intended husband at the time the agree-

ment was executed and the marriage consummated? The intended husband then owned and possessed, after the payment of all debts, at least $10,000 worth of personal property and retained the use of all of said farm lands during his life, which would produce an annual rental of at least $4000. He lived about ten years after his marriage, and died leaving an estate consisting of personal property valued at about $35,000. The provision made for the wife gave her a small house in which to live, a widow's award, (which was fixed at $1350,) and provided she was to receive $1500 in cash within sixty days of her husband's death. Had Murdock been possessed only of the $10,000 worth of personal property it might have been argued with some force that the amount which the defendant in error, in case she survived him, was to receive under the agreement was a reasonable provision for her support in view of the amount of his property. Said personal property did not, however, constitute all his property at the time of said marriage, but in addition thereto he possessed said life estate in the said farm lands, which, as it turned out, by reason of the length of time which he lived subsequent to the marriage, was the most valuable asset which he then owned. The said life estate must, we think, therefore be taken into consideration by the court in determining the question whether the provision made by Murdock for his intended wife was disproportionate to the amount of his estate at the time she executed said agreement. From a careful consideration of all the evidence we are of the opinion the chancellor and the Appellate Court properly held the provision made for the defendant in error was disproportionate to the amount of her intended husband's property, and that owing to the fiduciary relation which is presumed to exist between a woman and the man whom she is about to marry, the presumption obtains the defendant in error executed said agreement by reason of the fact that the nature, character and value of the husband's property was designedly concealed from her,

and properly held that the burden of proof was upon the plaintiffs in error to show that the intended wife had knowledge of the nature, character and value of Murdock's property at the time she executed said agreement.

This being true, and there being no direct proof in the record that defendant in error was advised or had knowledge of the nature, character and value of her intended husband's property, the next question to be decided is, did the facts that the intended wife lived near the intended husband and had been well acquainted with him for years, and that he was reputed to be a man of wealth, supply such proof? We are of the opinion they did not. This case, upon its facts, is very similar to the *Hessick case.* In that case, as here, the facts that the intended wife had resided near the intended husband for a number of years prior to the marriage, that they, during that time, had been well acquainted with each other and that the husband was generally reputed to be a wealthy man, were relied upon to bring knowledge home to the intended wife of the nature, character and value of his property. It was there held such facts were not sufficient to show the intended wife had such knowledge, and on page 492 it was said: "Were the circumstances surrounding the parties at the date of this marriage contract, as shown by the evidence, such as that appellee can reasonably be held to have had the requisite knowledge? We are inclined to adopt the conclusion of the court below in holding that they were not. But two facts were proved from which it can be inferred she had any information on the subject of his property, namely, that he was generally reputed to be wealthy, and that she had for years been well acquainted with and resided near him. The circumstance of his reputed wealth is entitled to but little weight as tending to prove that she knew the nature or value of his property. The reputation of persons as being rich or wealthy is too indefinite and general to charge those who deal with them with knowledge of the *kind* and *amount* of property they are possessed of. If

it be true, as a general proposition, that appellee, residing in the immediate neighborhood of Hessick, would be supposed to know the size, character and value of the farm he resided upon, she cannot, from that circumstance alone, be fairly charged with knowledge of other land, money and chattel property owned by him. Under the qualifications of the rule it is as important that she be held to knowledge of the *character* of his property as that she knew of its value, and even more so."

We are also of the opinion the defendant in error was not bound by the knowledge possessed by her son-in-law with reference to the financial standing of Murdock unless his knowledge was communicated to her. The evidence fails to show it was, and she was not bound thereby.

The plaintiffs in error rely upon the *Yarde case, supra.* That case fully recognizes the law to have been correctly announced in the *Taylor, Achilles* and *Hessick cases,* and the proof there showed that the provision made for the intended wife, when the claim of the intended husband's children was taken into consideration, was not disproportionate to the amount of the intended husband's property. It also showed that the intended wife not only fully understood the contract, but that the nature, character and amount of the property of the intended husband was known to her at the time that she executed the agreement. That case is therefore so far different in its facts from the case at bar that it cannot be held, as is contended by the plaintiffs in error, conclusive of the questions involved in this case.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*