NANCY E. RANKIN, Plaintiff and Appellee, v. E. A. SCHIERECK et al., Defendants and Appellants.

**Dower:** LIMITATION OF ACTIONS: ANTENUPTIAL CONTRACTS: FRAUD. The
1    statute of limitations will not begin to run against a wife's right of dower until the death of the husband; and where her rights depend upon an antenuptial contract prohibiting participation by each in the property of the other, which the wife contended she was fraudulently induced to sign, it is not necessary to protect her rights that she bring action to set the contract aside during her husband's life time, as such contract has a vital bearing only on her right of dower. This rule does not apply as between the widow and third parties, who acted in good faith on the strength of such contract.

**Husband and wife:** ANTENUPTIAL CONTRACTS: BURDEN OF PROOF. An
2    antenuptial contract fixing the property rights of the parties is valid and binding when honestly made, but is void if procured by fraud or duress, the same as other contracts. In the making of such contracts the law requires the utmost good faith on the part of both, and where such a contract is apparently unreasonable the burden of showing that it was fairly entered into is upon the party seeking to establish it.

**Equitable actions:** ADMISSION OF EVIDENCE. In equitable actions incom-
3    petent evidence cannot be excluded by the trial court, though exceptions to the same must be noted; and on appeal the incompetent testimony will be rejected.

Fraud: ANTENUPTIAL CONTRACT: EVIDENCE.   In an action to set aside
an antenuptial contract fixing the rights of each spouse in the
property of the other, the evidence is reviewed and held insuffi-
cient to show that the contract was unfair, secretive, overreaching
or unjust in any respect.

Same: BURDEN OF PROOF.   Where both parties to the marriage were of
advanced age, had families of their own and the wife sought the
marriage desiring a home, and the husband's children were opposed
to the marriage on the ground that it would affect their inheritance,
an antenuptial contract by which the wife waived her dower right
in the property of the husband cannot be said to be so unreasonable
as to cast the burden of proving that it was fairly entered into upon
those claiming its validity.

*Appeal from Davis District Court.*—HON. FRANCIS M. HUN-
TER, Judge.

THURSDAY, MAY 14, 1914.

ACTION for establishment of plaintiff's dower right in cer-
tain real estate as widow of A. W. Rankin.  Defense, an ante-
nuptial contract waiving such right.  From a decree in favor
of plaintiff, defendants appeal.—*Reversed.*

*W. W. Rankin,* and *Payne & Goodson,* for appellants.

*H. C. Taylor* and *C. W. Ramseyer,* for appellee.

WITHROW, J.—I. This action was brought in equity by
Nancy E. Rankin, surviving widow of A. W. Rankin, deceased,
to admeasure her dower interest in certain real estate owned
by him during coverture and at his death, and to which she
had made no relinquishment.  As a defense it was pleaded
that prior to the marriage of plaintiff and her husband they
had entered into an antenuptial contract in which each relin-
quished to the other all interests which would arise upon sur-
vivorship.  The contract is as follows:

This contract this day entered into between A. W. Rankin and Nancy E. Emanuel, both of Davis county, Iowa, witnesseth: That the said parties have this day mutually agreed to marry and become husband and wife according to law, and it is hereby agreed by the parties to this contract that each of them is to retain his or her own property free from the claim of homestead or dower or other interest commonly given by law to parties becoming husband and wife, and, in case of the death of either or the dissolution of the marriage relation, the property and effects, both real and personal, of each shall belong to the respective parties to this contract, and shall descend according to law to the heirs of each, or be disposed of by will as fully as though no marriage relation ever existed between said parties. Dated and signed this 4th day of December, 1901, at Bloomfield, Iowa. [Signed] A. W. Rankin. Nancy E. Emanuel.

As to the lands conveyed by A. W. Rankin after the marriage, there was a plea of estoppel, based upon the record of the antenuptial contract, which was relied upon by the purchasers. Defendants also pleaded acquiescence by the plaintiff in the marriage contract and an estoppel arising from such acquiescence, and also pleaded the statute of limitations. In reply the plaintiff admitted the signing by her of the antenuptial contract, but says that the same never was binding upon her, for that prior to its signing she never had seen it; that she signed it at the request of A. W. Rankin, and that its contents were not made known to her at the time; that there was no disclosure of its purpose, and she was not advised of the effect it would have upon her rights. She states that her signature was obtained by fraud, concealment and bad faith; that she signed the same under a mistake as to its contents; that she understood that it made provision for each to manage their separate property; that the contract was signed at a time when confidential relations existed between the parties; and that because of such relations she relied upon the assurances of A. W. Rankin as to the purpose of the instrument.

There was a trial to the court, resulting in a decree in favor of plaintiff, and awarding to her one-third in value of the real estate involved in the proceedings, excepting that which had been conveyed by A. W. Rankin after his marriage, without the joinder of plaintiff; the purchasers having relied upon the antenuptial contract as protection against the lack of her signature to the conveyance. From the decree so entered, the defendants appeal.

II. Both parties to the antenuptial contract had previously been married, and each had children living, all of whom had reached majority. At the time, the plaintiff was possessed of a life interest in forty acres of land, the net annual income from which was, as stated by different witnesses, from $25 to $60. She had a small amount of personal property, but not of such value as to add materially to her means of support. A. W. Rankin was the owner of about four hundred acres of real estate in Davis county, reduced by later conveyances to two hundred and twenty acres, at the time of his death found to be of the value of about $14,000, and a personal estate, practically all of which was required to pay indebtedness of the estate and expense of last sickness. At the time of the marriage the plaintiff was fifty-four years old, and her husband was twenty years her senior.

The parties met first at the county fair in the autumn of 1901. Courtship followed, resulting in the marriage, which occurred December 8, 1901. The contract about which centers the controversy in this case bears date four days preceding the marriage, was drawn by the son of A. W. Rankin, he being an attorney, and was duly acknowledged. After it was signed, possession of it was taken by A. W. Rankin, and it was not placed upon record until June 29, 1903, and this was done that certain conveyances of real estate which were to be made by A. W. Rankin might be sufficient without the signature of the wife. The relation of husband and wife existed between the parties for about nine years, and was terminated by the death of the husband in 1911. In 1904 he suffered a stroke of

paralysis, followed by a second in 1907, and the third in late 1910, which finally resulted in his death. During the years he was thus afflicted the wife rendered to him and their home faithful service, and, save complaint that·under the claimed contract she would receive nothing at his death, her care and attention were willing. In his will executed after the first stroke of paralysis, A. W. Rankin provided that there should be paid to his wife from the estate the sum of $500 in lieu of all claimed rights or interest, and that such payment should not be made unless there was a waiver by her of her right to one year's maintenance following his death, or if she repudiated the antenuptial contract. She rejected the provisions of the will, by suitable action was granted a widow's allowance, which on appeal to this court was affirmed. Other facts material to certain branches of the case will appear later in the opinion.

III. The appellant relies upon the statute of limitations as one of the defenses, upon the theory that, as the proceeding, in so far as it seeks to set aside the marriage contract, is based upon fraud and undue influence, it should have been brought within five years. The point does not require extended discussion. This court has definitely held that the statute of limitations does not run against the wife's right of dower until the death of the husband. *Lucas v. White,* 120 Iowa, 735; *Wallace v. Wallace,* 137 Iowa, 172.

1. DOWER: limitation of actions: antenuptial contracts: fraud.

When, as in this case, the proceeding is brought for such purpose, with defense as is here pleaded, and with avoidance as shown in the reply, the issue, while centering about the antenuptial contract, has vital bearing only upon the right of dower. If the antenuptial contract was procured or induced by means which rendered it invalid at the time of its execution, as between the parties it never had legal existence, and the law nor equity would not require that, to protect her ultimate rights, the marriage relations should be disturbed by an adversary action between them. As between plain-

tiff and third parties a different rule would apply; but we need not, under the facts and conclusions of the trial court in this case, further consider them than to state that in the deed the purchasers' rights were fully protected, and from such the plaintiff does not appeal.

IV. We consider first the law which must govern the case. Contracts of the nature of the one in suit, when freely entered into between the parties, with a full understanding of the effect they will have upon the future rights of the respective parties, are as binding as all other contracts. *Jacobs v. Jacobs,* 42 Iowa, 600; *Peet v. Peet,* 81 Iowa, 172; *In re Thorman's Estate,* 162 Iowa, 316.

2. HUSBAND AND WIFE: ante-nuptial con-tracts: burden of proof.

This general rule recognizes the further rule applicable to all contracts that, when they have been procured through fraud or duress, they are noneffective as a binding obligation between the parties.

There is the further requirement as to antenuptial con-tracts that, because of the relation of trust and confidence existing between the parties, being generally at a time but shortly before the expected nuptials, when if ever the man is expected to be frank and open as to all things concerning their mutual interests, and when the woman has the right to expect and rely upon a full and open disclosure of all material matters bearing upon the subject-matter of the contract, that a concealment or the practice of deceptive methods by which she is misled will be sufficient warrant for setting it aside. The law requires in such cases the utmost good faith on the part of both. *Fisher v. Koontz,* 110 Iowa, 498; *In re Devoe's Estate,* 113 Iowa, 4. And when an ante-nuptial contract is apparently unjust or unreasonable, the burden of proof is cast upon those claiming under the hus-band to show that the contract was fairly procured. *Fisher v. Koontz, supra,* and cases cited.

Counsel has cited many authorities, none of which tend to state differently the rules above given, and, as our own

cases above cited are clear upon the several propositions considered in them, we need give no further attention to the legal propositions, but will consider the facts, from which, under the guiding rules, we must determine the rights of the parties.

V. The proceeding is in equity. The rules of evidence in such cases are such that the trial judge, while noting objections, may not exclude offered testimony. Because of such this record abounds in much testimony which is incompetent under section 4604 of the Code, and which must, in the consideration which we give to the case, necessarily be rejected. Also on either side, as appears in the record, arose many of those not unusual situations when an otherwise incompetent witness heard and testified to conversations with the decedent in which he took no part, thereby making the evidence competent. This is not by way of criticism, for we recognize that section 4604, while based upon a wise policy, at times results in difficulty in proving up a really just cause; but it occasionally appears that the avenues of proof by indirection and of nonparticipation are crowded beyond that which may properly be considered as rightful travel along that way, and courts are justified, and it is their duty, to carefully scan such evidence that the truth alone may be developed. We turn then to the evidence which has proper bearing upon the case.

3. EQUITABLE ACTIONS: admission of evidence.

VI. Mrs. Rankin, whose name before her marriage to the decedent was Mrs. Emanuel, had been twice married before she met Mr. Rankin. She was of fair education, and as administratrix had settled the estate of her second husband. After his death she had made her home with some of her children, and depended upon the meager income resulting from her life estate in a forty-acre tract of modest value. She knew Mr. Rankin only in a general way before meeting him at the county fair. With no impropriety on her part, she con-

4. FRAUD: antenuptial contract: evidence.

ceived the idea that he would be a desirable husband, and in this thought she was encouraged by friendly women, with the final result of a marriage between them. The evidence clearly shows that she made inquiries and secured knowledge as to the extent of his possessions, and there is nothing to warrant even an inference that she was misled in that respect. She was wanting a home in which she would be the mistress; he, perhaps, a wife to take the place, in part at least, of her who had been taken away. It is apparent from the record that the proposed marriage did not meet with the full approval of his children, not from any objection to her personally, but apparently for reasons based upon their rights of inheritance, which by another marriage would be affected. Whatever the purpose, it appears that Mr. Rankin had caused to be prepared by his son, an attorney, the instrument which is in controversy, and we also think it fairly appears from the evidence that he submitted it to her for consideration and criticism before the day of its execution, although in her testimony she stated that she never had seen it before it was presented to her for signing. Different witnesses testified to having heard her say that she had been given the contract by Mr. Rankin two weeks before it was signed, that she might submit it to her children, and, if she thought best, to an attorney, and that she returned it with the statement that she did not care to consult her children about it, and did not require the care of a guardian. At the time of the signing of the contract the parties were in the office of the notary public, who testified that Mr. Rankin requested that they might have a place for a few moments' conference, and that they went behind the counter in his office, where the paper was produced by Mr. Rankin, who handed it to her. She looked it over, although she says she did not fully read it, but upon his inquiry stated that it was all right. The notary public testified to these facts also, excepting that he said she had it in her hands but a short time, and, if she read it at all, it must have been hurriedly, but then signed the instrument.

which was duly acknowledged. There was evidence introduced tending to show, and the trial court so found, that the appellee, Mrs. Rankin, understood that she was entering into a contract which provided only that their respective properties should be severally managed by them; but, as we read this record, the competent evidence upon that subject falls short of establishing it as a fact. There was evidence of conversations between Mrs. Rankin and a witness, at a time when Mr. Rankin was in the room, and that, as to statements made by her as to her understanding and purpose in signing the contract, he made no objection or correction; and this is relied upon as an admission by silence. Passing the question of self-serving declarations, the evidence does not satisfactorily show that Mr. Rankin heard the conversation. He was in bed as the result of his second stroke of paralysis, and it is far from clear that he heard or had the ability to reply to what was said. The conversation was not addressed to him, and we cannot consider it as having that strength which makes it proof of the fact by way of admission. Evidence was introduced of many declarations made by Mr. Rankin from which it appears that he said in substance that after his death his wife would be comfortably cared for.

Conceding that he so said, we do not find such as shedding satisfactory light upon the main question. She was discontented because her work during his prolonged illness resulted in no other compensation than that which a wife receives for such services, and because she would not share in his estate. At one time she left the house, but was persuaded to return. It is not to be doubted under the evidence that the main cause of her dissatisfaction at this and other times was the antenuptial contract, and it was on many of such occasions that her husband made the statement of his purpose as to future provision for her. These, however, so far as shown by competent evidence, were not admissions or statements of anything which tended to support the claim that he had misled her knowingly or permitted her to be misled as

to the effect of the contract. Evidence of his alleged declarations that upon her reproaching him he admitted beating her out of her interest in his property is not of such nature as to satisfy us that it has the weight of proof, as in many instances the surrounding circumstances render it quite improbable that he was heard to make such statements. It appears without contradiction that in his lifetime Mr. Rankin was reputed to be fair and just in all his dealings, never known to wrong another; and no evidence is given in which it is claimed that he acted otherwise, save in the procurement of the contract in controversy. But from the whole record we fail to find evidence to warrant the finding that he was unfair, secretive, overreaching, or unjust in that respect.

Stress is laid upon the fact that the contract was withheld from record for a year and a half after its execution, and then recorded because of some sales of real estate made by her husband. The fact of withholding it from record is entirely consistent with her previous expressions that she did not care to consult her children about it, perhaps knowing that, if she did so, they would object. It is significant in this connection to note that her discontent was not manifested until after the contract was recorded, and her children became interested. True, she says that up to that time it had not been in her possession, and she did not know its provisions, and that upon hearing its terms she made protest; but under all the evidence we are unable to reach that conclusion.

VII. It is claimed that the contract is unjust and unreasonable, and, such being shown, the burden of proof is upon those relying upon it to show that it was fairly entered into, and not procured by fraud or duress, or in violation of the trust arising from the confidential relation between the parties. We have heretofore referred to their respective properties. Both had children, and the accumulations to their properties were at their ages probably at an end. The courts have uniformly recognized that the inheritable rights of the children are al-

5. SAME: burden of proof.

ways an element to be considered in such a transaction, and this no doubt was in the minds of both of the parties, especially Mr. Rankin, and recognized by Mrs. Emanuel. Considering the proof that she sought the alliance, that she needed and was desirous of a home, and the circumstances surrounding each, we would hesitate before concluding that the contract itself was unreasonable and unjust, even though under it she is deprived of an interest in his estate. From the whole record, which we have carefully read, we reach the conclusion that Mrs. Emanuel knew of the terms of the marriage contract, freely entered into it, uninfluenced by fraud or deceit, and that we have not the right to say that it should not be binding. As bearing close to this case in facts and conclusions, see *Peet v. Peet*, 81 Iowa, 172. We necessarily divorce our minds from conditions subsequent which naturally cause feelings of sympathy with the widow, for during the lifetime of her husband, while she was his wife, she was faithful and devoted, and through the long days of his invalidism she ministered well to his needs. Such care merits compensation, stating a moral view, but does not warrant us, as a means of providing it, to declare invalid an instrument limiting her rights which to us seems to have been fairly entered into.

From the conclusions reached, the decree of the trial court must be and is—*Reversed.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concur.