## In re Estate of Logan Enyart.

### Katherine Enyart, Appellee, v. Albert F. Enyart et al., Appellants.

#### Filed November 17, 1916. No. 18966.

1. **Appeal:** ADMISSION OF EVIDENCE. The admission of incompetent evidence in a case tried without a jury does not furnish ground for the reversal of a judgment, provided that there is sufficient competent testimony in the record to convince this court that the judgment of the trial court is right.

2. **Husband and Wife:** ANTENUPTIAL CONTRACTS. Courts will rigidly scrutinize an antenuptial contract apparently unjust, especially where it deprives the wife of her interest in the husband's estate without providing for her in case she survives him.

3. ————: ————: VALIDITY: BURDEN OF PROOF. The burden is upon the husband, or his representatives, to show that an antenuptial contract apparently unjust to the wife was fairly procured.

4. ————: ————: ————. In view of the close and confidential relation existing between affianced persons, it is the duty of the prospective husband to make a full and fair disclosure of all material facts relating to the amount, character and value of his property, so that the prospective wife may have sufficient knowledge upon which she may exercise her judgment whether she will enter into such a contract.

5. ————: ————: ————: BURDEN OF PROOF. Where the provision made for the intended wife by an antenuptial contract is grossly disproportionate to the interest in the prospective husband's estate which the intended wife would acquire by operation of law in case a marriage took place, the burden rests upon those claiming the

100 Neb.—22

validity of the contract to show that a full and fair disclosure was made to her before she signed it of the extent and value of the property, or that she was aware to all intents and purposes of the nature, character and value of the estate which she was relinquishing if the marriage took place.

6. ———: ———: ———. The mere fact that an intended wife who signs an antenuptial contract knows in a general way that the husband is reputed to be a wealthy man and to own farms and an interest in banks is not sufficient to meet the requirements of the equitable rule of fair disclosure, or charge the wife with such knowledge of the nature and value of his property as to render an unfair contract binding upon her.

7. **Parol Evidence:** ADMISSIBILITY. Where a contract is uncertain and ambiguous in its terms, facts may be received in evidence to show the construction placed upon it by the parties.

8. **Witnesses:** COMPETENCY: PRIVILEGED COMMUNICATIONS. Where checks paid to the wife and receipts signed by her for annual payments provided for in an antenuptial contract have been received in evidence on behalf of the representatives of the deceased husband, the widow may testify to facts with reference to the same transactions.

9. **Wills:** ELECTION. A statute fixing the time within which a widow must elect whether to take the provisions made for her in his lifetime by her husband or to recover her dower or other provisions made for her by statute pertains to the remedy, and, if the widow made her election in conformity with the statute in force at the time of her husband's death or the filing of her election, this is sufficient.

10. **Husband and Wife:** ANTENUPTIAL CONTRACT: INVALIDITY. Under the facts in this case, *held*, that the antenuptial contract in question is invalid for the reasons set forth in the opinion.

APPEAL from the district court for Otoe county: JAMES T. BEGLEY, JUDGE. *Affirmed.*

*Jesse L. Root, L. F. Jackson, George W. Berge, Matthew Gering, John C. Watson, W. W. Wilson* and *D. W. Livingston,* for appellants.

*Paul Jessen, B. F. Good, William H. Pitzer* and *Edwin Zimmerer, contra.*

LETTON, J.

Appeal from a judgment of the district court which affirmed an order of the county court of Otoe county awarding Katherine Enyart, the widow of Logan Enyart, an allowance of $200 a month pending the settlement of the estate of her deceased husband. The appeal is taken by the administrator and the heirs and devisees of Logan Enyart, deceased. The question as to whether such allowance should be made has been made by the parties to depend upon the validity of an antenuptial agreement entered into by the parties. The estate of the deceased is a valuable one, and, while the amount involved in the present issue is comparatively small, the decision in the case is of great importance, as it affects the disposition of much valuable property. The contract is as follows:

"State of Nebraska.                              1898 A. D.

"This article of agreement made this 2d day of April, 1898, by and between Logan Enyart of Otoe county, state of Nebraska, being the party of the first part, and Katherine Richardson of Otoe county and state of Nebraska, being the party of the second part, witnesseth:

"That the aforesaid parties above named have this day mutually agreed to enter into a marriage contract for their betterment, for their own social happiness during their natural lives, until death separate them, to be solemnized by marriage. This agreement shall be construed both in law and equity as a marriage contract, to govern both parties. It is made in lieu of any dower interest, claim or rights of whatever name, kind or nature that might arise by law or equity from a marriage between the parties above named, as full consideration of the second party's interest.

"The party of the first part has agreed to pay to the party of the second part, to her only, the sum of $10,000 (ten thousand dollars) in installments of ($500) five hundred dollars annually upon the anniversary of this agreement. It is further agreed that the party of the second

part shall sign all deeds or conveyances requested by the party of the first part.

"Now it is expressly understood by both parties, that the above sum is all that the party of the second part shall ever claim off of the party of the first part or his estate from marriage.

"This agreement shall not prevent the first party from giving anything by check, deed or bequest that he may desire to the party of the second part, for kindness, love and affection.

"In witness whereof the said parties have set their hands and seals the day and year first written.

"The words 'to her only' means to herself.

     "Logan Enyart.   (Seal)
     "Katherine Richardson. (Seal)

"Witness as to the signatures:

"J. H. Catron.

"Geo. W. Hawke."

This contract was acknowledged before Mr. Hawke, who was a notary public.

Objections to the claim were filed in the county court by the appellants, which set forth the antenuptial contract and pleaded that it was valid; that the contract was entered into in contemplation of marriage, for the purpose of making settlement of all property rights; that $7,500 has been paid on the contract; that Enyart gave to his wife in money and real estate before his death under the last clause of the agreement property of the value of $90,000; and gave about $40,000 worth to her daughter and grandson.

By reply Katherine Enyart denies that the conveyance and gifts to her were made under and in pursuance of the contract; denies that she ever received or retained any benefits under it; alleges that she had no knowledge of Enyart's business affairs or property at the time of marriage more than that he was able to comfortably provide for her, and that, being ignorant of her rights, and having no information as to the amount and value of his

property, she signed the contract; that at the time, Enyart was worth nearly $300,000 and by reason of the facts she was defrauded of her marital rights; that afterwards her husband contended that the contract relieved him of any obligation to support her and other members of her family; that the contract is contrary to public policy and void; that the money paid to her by Enyart during his life had been spent for the support and maintenance of the family and the furnishing and supplying his home; that deeds to certain real estate delivered to her which were placed for safekeeping in a bank at Nebraska City were altered by inserting a clause that they were made in lieu of dower in Enyart's estate, which clause was inserted subsequent to delivery, and without her consent; that she has refused to accept the deeds or to claim title thereunder with said clause therein. She tenders these deeds to the administrator "until the validity of the clause which was placed in said deeds, without her knowledge or consent, can be determined." She also tenders a note for $10,000, signed by Enyart, payable to herself, and found with his papers after his death.

A number of assignments of error are relied upon for a reversal of the judgment of the district court. The first six of these relate to the alleged errors in receiving incompetent evidence. The remaining assignments are practically embraced within the contention that the decree upon the evidence should have been for the appellants.

The assignments of error with regard to the introduction of testimony must be overruled. We have repeatedly held that in a trial before a judge the admission of incompetent evidence does not furnish ground for the reversal of a judgment, provided that there is sufficient competent testimony in the record to convince this court that the judgment of the trial court is the judgment which should have been rendered upon the evidence. *Smith v. Garbe,* 86 Neb. 91; *Clark Implement Co. v. Wiltfang,* 87 Neb. 796; *Kemmerling v. State,* 89 Neb. 98; *Smith Bros. v. Wood-*

*ward,* 94 Neb. 298. This is practically conceded in the brief of appellants.

Does the evidence justify the decree? The record is very voluminous, consisting of nearly 2,000 typewritten pages. The printed briefs cover 369 pages. Yet, the principles which determine the case are few and simple. We think it unnecessary to set out more of the evidence than its substance as to the incidents preceding the execution of the contract, since in our view the contract itself, when considered in connection with all the circumstances of its execution, furnishes sufficient data wherewith to test its validity.

In 1898, at the time of the marriage, Logan Enyart was a man of large means, owning several farms and a great deal of other property in this and other states. It is stipulated that at this time he was worth about $225,000. His first wife died in March, 1896. He was 68 years of age, and had no children. It was his custom when he visited Nebraska City, near which the farm upon which he resided was situated, to make his headquarters at a certain hotel. The appellee, then Katherine Richardson, was living at this hotel, where her husband had deserted her. She was about 34 years of age, and had a daughter about 15 years old. It was necessary for her to support herself and child. She assisted in the work in the hotel, and was treated practically as one of the family of the proprietor. She lived in the hotel for about two years after her husband deserted her, and during this time procured a divorce. Part of the time she was employed in a millinery store and in a dressmaking shop, but she worked at the hotel mornings and evenings. Enyart and the hotel proprietor were intimate friends, and when he came to the hotel he often was served at the family table, where Mrs. Richardson also sat. About a year before the marriage the parties became acquainted. After several months time, during which she often met Enyart at the hotel, Mrs. Richardson went to Auburn to act as housekeeper for a family there. She was gone about six months, and was visited by Enyart twice while there.

She came back to the hotel from Auburn about a week or two before the marriage, announced her engagement, and lived at the hotel until the marriage took place.

Two days before the marriage Enyart, using a form book in part, dictated to Mr. Catron, a business associate and confidential friend, who reduced it to writing, the essential features of the contract. On the same day, at Enyart's request, Mr. Catron went to the hotel for Mrs. Richardson and brought her to his own home, where Enyart was waiting with Mr. Hawke, the notary, who was also a close friend of his. The proposed contract was read, either by her or to her, and it was there signed by both parties.

The contract was kept by Mr. Enyart, and was filed for record in December, 1902, in the office of the register of deeds of Otoe county. Enyart died on November 9, 1912. He made two wills and also left a large amount of valuable property undisposed of by will. One will disposed of certain property in Colorado and other states in which he had a partnership interest with his brother, A. F. Enyart. The will gave the brother all of this except $5,000, which was directed to be paid to the widow. The other will gave his interest in a cattle company owning 2,840 acres of land in Nebraska to six persons, Hazel R. Black, Mrs. Enyart's daughter, being one of them.

Whether an antenuptial contract, by virtue of which one party to an intended marriage, for a legal consideration, parts with marital rights in the property of the other, may may be valid and a bar to dower has been settled in this state. *Rieger v. Schaible,* 81 Neb. 33. In fact, most courts now support antenuptial contracts if fairly made. Such instruments frequently tend to peace and happiness by settling questions concerning rights of property which, especially in the case of marriage of people in later life having children of a former marriage, often furnish grounds of irritation and friction which may defeat the very purpose of the union.

Considering the facts properly in evidence, was the antenuptial contract entered into between Logan Enyart and

Katherine Richardson, at the time it was made, fair, just, reasonable, and such a one as the courts, in view of all the circumstances of both parties at that time, should recognize and enforce?

In *Rieger v. Schaible,* 81 Neb. 33, 49, after a careful examination and review of many cases, it is said: "We think the rule deducible from the authorities under review is that in equity an antenuptial contract, in consideration of marriage and the release by each party of all interest in the property of the other, is based upon a sufficient consideration as to both parties, when each is the owner of an estate in which the other would acquire an interest by reason of the marital relations but for the antenuptial agreement, and is sufficient, *when equitable and fair in its terms and entered into in good faith,* to constitute an equitable bar to dower." The opinion quotes 21 Cyc. 1249: "An antenuptial agreement wherein the intended wife releases 'all claims against the estate of the intended husband although valid when fairly made, will be most rigidly scrutinized, and, if the circumstances show that she has been deceived, it will be set aside.'" The contract was held under the facts in evidence to be valid, but the court say: "In this respect, however, and before passing from this branch of the case, it might be well to state that a court of equity, when called upon to consider an antenuptial contract, should examine and construe the instrument in the light of the circumstances surrounding that particular case, and enforce or annul the agreement according to the facts disclosed in the case before it. No arbitrary rule can be laid down which would apply to all antenuptial agreements." This is the proper rule, to which we adhere.

While there are decisions of courts of high authority which hold that marriage alone furnishes a full and sufficient consideration for the release by an intended wife of her rights of dower and of all other rights she would obtain by virtue of the marriage relation, even when no provision is made for her support and welfare after the death of the husband, yet we are convinced that the better

rule is laid down in *Rieger v. Schaible, supra.*  This is the doctrine laid down in the following cases, and others that could be cited:  *Murdock v. Murdock,* 219 Ill. 123; *Mines v. Phee,* 254 Ill. 60; *Simpson v. Simpson's Ex'rs,* 94 Ky. 586; *Tilton v. Tilton,* 130 Ky. 281; *Slingerland v. Slingerland,* 115 Minn. 270; *In re Estate of Pulling,* 93 Mich. 274.

It is also a well-established rule that, in view of the close and confidential relation existing between affianced persons, it is the duty of the prospective husband to make a full and fair disclosure of all material facts relating to the amount, character and value of his property, so that the prospective wife may have sufficient knowledge upon which she may exercise her judgment whether she will enter into such a contract.  The general principle was laid down in *Kline v. Kline,* 57 Pa. St. 120, 98 Am. Dec. 206, by Judge Sharswood, and has been adopted and applied in many cases. *Pierce v. Pierce,* 71 N. Y. 154; *Lamb v. Lamb,* 130 Ind. 273; *Murdock v. Murdock, supra; Warner v. Warner,* 235 Ill. 448; *Simpson v. Simpson's Ex'rs, supra; Slingerland v. Slingerland, supra; Rankin v. Schiereck,* 166 Ia. 10.

Where the provision made for the intended wife by an antenuptial contract is grossly disproportionate to the interest in the prospective husband's estate which the intended wife would acquire by operation of law in case the marriage took place, the burden rests upon those claiming the validity of the contract to show that a full and fair disclosure was made to her before she signed it of the extent and value of the property, or that she was aware to all intents and purposes of the nature, character, and value of the estate which she was relinquishing if the marriage took place. *Murdock v. Murdock, supra; Warner v. Warner, supra; Mines v. Phee, supra; Warner's Estate,* 207 Pa. St. 580.  These principles, though not universally accepted, seem to us to be based upon sound reason, and to be most consonant with the trend of judicial thought, more particularly in the western states.  14 Cyc. 940; 21 Cyc. 1250.

The evidence is convincing that Mrs. Richardson knew before the marriage that Enyart was a wealthy man owning farms and interests in banks and other property, but that she was informed with any degree of definiteness as to his actual possessions and their value is very doubtful indeed. It appears that a large part of Enyart's wealth lay in other states, and there is no proof that the intended wife had any knowledge of this, other than that he had an interest in a ranch in Colorado. The mere fact that she knew in a general way that Enyart was reputed to be a man of means is not sufficient to meet the requirements of the equitable rule of fair disclosure, or to charge her with such knowledge of the nature and value of his property as to render such a contract binding upon her. On this point appellants have not sustained the burden of proof. *Murdock v. Murdock, supra; Warner v. Warner, supra; Mines v. Phee, supra.*

At the time the contract was entered into Enyart's expectancy of life is shown to have been 10.23 years, and that of Mrs. Richardson to be 31.68 years. In all probability it was to be expected that she would survive him, and would also survive the expiration of the annual payments to be made under the contract. If she should live the period of her expectancy, she would receive nothing from the estate for more than 11 years before her decease.

The agreement is to pay $10,000 at the rate of $500 annually on April 2 of each year. This is equivalent to the payment of the annual interest on $10,000 at 5 per cent. for 20 years. At the end of this time Enyart or his estate would still have the $10,000 having merely parted with the usufruct. For the income of $10,000, therefore, for 20 years, which is more than 10 years less than her expectancy, Mrs. Richardson surrendered not only all interest in Enyart's real estate, but further agrees "that the above sum is all that the party of the second part *shall ever claim off of the party of the first part* or his estate from marriage." Such a provision was so disproportionate to the wealth of Enyart as to require those asserting its validity

In re Estate of Enyart.

to sustain the burden of proof that it was entered into with full knowledge on the part of Katherine Richardson of the nature, extent and character of Enyart's estate. Without this knowledge she could form no adequate idea of the problem before her, whether it were better to marry for a home and a pittance, or to refuse to marry unless provisions were made appropriate to her condition in life as the wife of a man of wealth, standing and importance in the community. We are satisfied this burden has not been met.

Furthermore, the contract is ambiguous in its terms. It is left to conjecture whether "all that party of the second part shall ever claim off of the party of the first part from marriage" means, shall claim during his lifetime after proper marital and legal support and maintenance have been provided for her by the husband. It is uncertain whether the annual payment is to be in addition to her reasonable maintenance, or is intended to limit the amount of maintenance to be supplied her. If it means that this sum is to furnish maintenance and support, pay for clothing, household furniture, and necessities, then the prospective wife gets practically nothing, for marriage imposes the duty of so providing on the husband. The meaning being uncertain, the construction placed upon contract by the parties themselves may be looked to in order to make clear that which is doubtful. *Becker v. Linton,* 80 Neb. 655. A vast amount of evidence on this point is in the record, and it is clearly established that Enyart intended that out of the annual payments his wife should pay for her own clothing and other necessaries, that he considered that much of the expense for proper furnishings for the home should be defrayed from this annuity, and that he often deducted the amount of bills he paid for such purposes from the amount for which the receipt was given. Receipts signed by Mrs. Enyart for some of these payments were received in evidence for the appellants. This opened the door for Mrs. Enyart to testify as to how the payments were made. *Cline v. Dexter,* 72 Neb. 619. While it appears

that Katherine Richardson desired to marry for a home
for herself and daughter, and it is very probable that, even
if fully informed as to Enyart's estate, she still would
have signed it, the contract, construed as Enyart in-
tended it to mean, is unconscionable, not in accordance
with the duties which the law imposes upon a husband
in the marital relation, and its terms are such that it
ought not to be enforced. *Isaacs v. Isaacs,* 71 Neb. 537.

After marriage Mr. and Mrs. Enyart lived together for
15 years, and in his later days Mr. Enyart showed his ap-
preciation of his wife by generous gifts to her and to her
daughter and grandchild. He was generous also with
several of his own relatives and others. While his estate
was depleted to some extent by these gifts, there is still a
fortune left to be disposed of.

It is claimed Mrs. Enyart is estopped to claim any share
in the estate for two reasons: (1) That she has accepted
and retained provisions made for her under the contract
and under the will of Mr. Enyart; (2) that she failed for
more than one year after his death to signify her desire to
take under the law, and not by will. As to the first point,
Mrs. Enyart has been paid $500 a year for 15 years, and of
this money a large portion has been devoted to the pur-
chase of articles it was the duty of Enyart to supply.
There is no proof of investments made with it and now
held by her, but, even if there were, the amount invested
would perforce be small as compared with his estate.
Furthermore, she has refused to accept the provisions made
by will, and a note for $10,000 payable to her found among
her husband's effects after his death. She is clearly not
estopped by ratification as to the money received by her
under the contract, the legacy, and the note. As to the
deeds made in his lifetime there is nothing to show that
they were made in pursuance to the contract or in
contemplation of it, except by inference. It is as easy to
infer that these gifts were made to her prompted by sound,
generous motives as the valuable gifts that were made to
his own relatives and others. The gifts to her daughter

In re Estate of Enyart.

and grandson, members of the household, are attributable to like impulses, and there can be no estoppel on Mrs. Enyart's part by reason of these gifts and their acceptance by the donees.

We come, now, to the contention that it was the duty of the claimant to elect within one year after her husband's death, under the statute in force at the time of the contract, whether she would take under the will or under the law. There is no vested interest in a statute, and a change in the manner of disposition of estates of deceased persons may be made by the legislature at any time. The law at the time of death determines the right and manner of disposition, and not the former law. The statute referred to (Ann. St. 1903, sec. 4918) provided that the widow should be deemed to have elected to take under the provisions made for her by jointure or other provision, unless within one year after her husband's death she commence proceedings for the recovery of dower. The statute (Rev. St. 1913, sec. 1272) now provides that she shall be held to take such provisions unless she file in the county court within one year after letters testamentary are issued a refusal in writing to take real estate or other provisions made for her. This was done by Mrs. Enyart by filing a written refusal so to take on September 3, 1913, within one year after Enyart died.

In this case it is to be remembered the intended wife had no property, and the intended husband had a great deal of property and had no children. In cases where each party was the owner of property, the release of all marital rights in the property of the other furnished an additional consideration or incentive to that of marriage for the making of the contract. Each case must be determined on its own peculiar facts, and an analysis of many of the cases cited by appellants shows such a different state of facts from those in this case that they afford no aid in its determination. Other cases seem to hold that the status of wedlock to be conferred upon a woman justifies an unconscionable surrender by her, in advance of the marriage, of the rights

and privileges which law and custom has conferred upon a wife. We prefer to follow the line of cases cited in this opinion.

We believe the judgment of the district court is the proper one on the facts, and it is, therefore,

AFFIRMED.

ROSE, J., dissents.