Stahl v. Stahl.

Theresa Stahl, Appellant, v. Michael Stahl et al.,
APPELLEES.

Filed July 26, 1927.   No. 25026.

1. Husband and Wife: Antenuptial Contracts: Validity: Bur-
den of Proof. "The burden is upon the husband, or his repre-
sentatives, to show that an antenuptial contract apparently
unjust to the wife was fairly procured." *In re Estate of
Enyart*, 100 Neb. 337.

2. ———: ———: ———. "In view of the close and confi-
dential relation existing between affianced persons, it is the
duty of the prospective husband to make a full and fair dis-
closure of all material facts relating to the amount, character
and value of his property, so that the prospective wife may have
sufficient knowledge upon which she may exercise her judgment
whether she will enter into such a contract." *In re Estate of
Enyart*, 100 Neb. 337.

3. ———: ———: ———: Burden of Proof. "Where the
provision made for the intended wife by an antenuptial con-
tract is grossly disproportionate to the interest in the prospective
husband's estate which the intended wife would acquire by
operation of law in case a marriage took place, the burden rests
upon those claiming the validity of the contract to show that
a full and fair disclosure was made to her before she signed
it of the extent and value of the property, or that she was
aware to all intents and purposes of the nature, character and
value of the estate which she was relinquishing if the marriage
took place." *In re Estate of Enyart*, 100 Neb. 337.

4. ———: ———: ———. The mere fact that an intended
wife, who signs an antenuptial contract, knows in a general
way that the husband is reputed to be wealthy and to own a
farm of 560 acres, and also other personal property, but without
any information or knowledge of the value of the real estate
or of the amount and value of the personal property, is not
sufficient to meet the requirements of the equitable rule of fair
disclosure, or charge the wife with knowledge of the nature
and value of his property so as to render an unfair contract
binding, especially when such intended wife had been, prior to
the making of such contract, continuously a resident of a dis-
tant city and state, wholly without knowledge of such farm
real estate and such personal property values, and a total
stranger to the community and state wherein such property was
situated.

5. ———: ———: ———. Under the facts in this case, *held* that the antenuptial contract in question is invalid for the reasons set forth in the opinion.

APPEAL from the district court for Fillmore county: ROBERT M. PROUDFIT, JUDGE. *Reversed, with directions.*

*W. L. Kirkpatrick,* for appellant.

*Sloans, Keenan & Corbitt, contra.*

Heard before GOSS, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

This is an action in partition. It is brought by plaintiff as a widow and statutory heir of Christian Stahl, deceased, against the defendants named, who are the children of deceased by his first wife. Judgment in district court for defendants, denying partition, and adjudging plaintiff by terms of antenuptial contract with deceased, dated and entered into May 1, 1902, entitled to receive the sum of $2,000, and no more, and to be barred by virtue of the agreement from any inheritance in or further claim against the estate of the deceased. Plaintiff appeals.

Partition in this state is deemed a proceeding in equity, and the case is here therefore for trial *de novo. Oliver v. Lansing,* 50 Neb. 828; *Arthur v. Arthur, ante,* p. 781.

A careful consideration of the pleadings and the evidence convinces us that this case is ruled by the doctrine announced by this court in *In re Estate of Enyart,* 100 Neb. 337. It is our view that the controlling contract in this case, when considered in connection with all the circumstances of its execution, furnishes sufficient data wherewith to test its validity.

Most of the following facts appear as undisputed in the record, at least so far as defendants are concerned: That Christian Stahl was 54 and plaintiff 44 on the day of their marriage, which was the date of signing the contract in suit; that Christian Stahl, then a widower, was

the father of nine children; that plaintiff, a widow, was the mother of four.

That plaintiff had emigrated to this country from Germany when 24 years of age; that she thereafter made her home in "Greater New York" until she came west to marry the deceased in 1902; that two years after her arrival in this country she became the wife of one Keller, and thereafter continued to live in Greater New York; that her then husband was an employee of a brewery, and later a saloon-keeper; the last statement may fairly be said to be conceded by appellees' brief. So far as shown by the record, the only real estate in which the Keller family had any interest was some city lots situated in that part of Greater New York known as Brooklyn. Later Keller died. The plaintiff then supported herself and children by conducting a boarding house. Up to the time of her trip to Omaha in 1902, which resulted in her marriage, there is no evidence of her ever having visited the rural districts of New York state, or indeed of her ever leaving the precincts of the city of her home.

The evidence also discloses that Christian Stahl came to Nebraska from Germany in an early day. He was married and nine children were born in his family. He had accumulated practically all the property in controversy in this action prior to the death of his first wife. After her death he continued to reside on his land in the vicinity of Grafton, Nebraska.

Decedent had relatives in Greater New York who were acquainted with plaintiff, and upon a visit there he was introduced to appellant. These two, in the two or three visits Stahl made to that city, manifested interest in each other, through which visiting and correspondence which took place ripened into an engagement to be married. This occurred in or about January, 1902. During this time it is claimed by the defendants that the separate stations and responsibilities of the then Mrs. Keller and of Christian Stahl were the subject of discussion; that the Nebraska property of the latter was described to the former;

and that particular inquiries were made by Mrs. Keller of Agnes Stahl (the deceased's daughter), who gave her detailed replies, and that none of the answers given were evasive or untruthful. Conceding this, a careful search of the record discloses that the following was substantially all the information imparted by any one to Mrs. Keller: That Christian Stahl was a rich man; that he owned 560 acres of land in Fillmore county, near Grafton; that he lived in a large new house situated on a half section belonging to the farm in question; that a quarter section of this farm was situated some two miles distant from the home place; that an additional 80 acres adjoined it; that there were substantially three sets of improvements on the place; that there was a large and valuable orchard on the tract; that in his home he had no piano, but owned an organ; that he did not use rugs, but employed rag carpets in lieu thereof; that he owned horses, cattle, and hogs, and also farm implements, but the number and kind and value of the personal property is not disclosed to her, neither is it shown that Mrs. Stahl was informed as to the actual value of the real estate, nor was she given any estimate as to the same.

It does not affirmatively appear that the subject of an antenuptial agreement had been discussed and agreed upon prior to the arrival of plaintiff in Omaha in 1902. There was an agreement for marriage. Decedent sent appellant $125 to pay the railroad fare of her and her children from Greater New York to Omaha, Nebraska. He evidently consulted his lawyer and had a form of antenuptial contract provided before the arrival of his intended wife. He went to Omaha accompanied by a daughter, where he met plaintiff and her children on her arrival from her former home. The party repaired to the Drexel Hotel. Plaintiff and deceased, unaccompanied, went to the Douglas county courthouse, and en route they stopped at a jewelry store, where a wedding ring was selected. From there they proceeded to the courthouse, where a marriage license was secured. The antenuptial contract was presented to his wife,

and she signed and acknowledged the same. It should be said that there is a serious conflict in the evidence as to whether the wife was advised of the nature of the instrument which she signed, whether she could then read it in the language in which it appears to be at the present time, and whether it was executed knowingly by her. But, for the purpose of this opinion, we assume, but do not decide, the facts with reference thereto to be as defendants contend. Following this the marriage ceremony was performed, and the marriage party proceeded to Grafton, near which the home of decedent was then situated.

The pleadings in the instant case do not present any questions of ratification by plaintiff of the contract of May 1, 1902, subsequent to the date thereof. Therefore, that question is eliminated from consideration. Maxwell, Code Pleading, 406; *Erickson v. First Nat. Bank of Oakland,* 44 Neb. 622; *Hosler v. Beard,* 54 Ohio St. 398; *Elston v. Jasper,* 45 Tex. 409. Neither is an estoppel alleged on behalf of the defendants. *Burlington & M. R. R. Co. v. Harris,* 8 Neb. 140; *International Building & Loan Ass'n v. Watson,* 158 Ind. 508.

We therefore recur to the contract as executed on the 1st day of May, 1902, to be considered in the light of the circumstances which surrounded its execution, as the just measure with which the rights of the parties to this action must be determined. "Whether an antenuptial contract, by virtue of which one party to an intended marriage, for a legal consideration, parts with marital rights in the property of the other, may be valid and a bar to dower has been settled in this state. *Rieger v. Schaible,* 81 Neb. 33. In fact, most courts now support antenuptial contracts if fairly made. Such instruments frequently tend to peace and happiness by settling questions concerning rights of property which, especially in the case of marriage of people in later life having children of a former marriage, often furnish grounds of irritation and friction which may defeat the very purpose of the union." *In re Estate of Enyart,* 100 Neb. 337, 343. Considering the facts properly in evidence,

was the antenuptial contract entered into by and between Christian Stahl and plaintiff, at the time it was made, fair, just, and reasonable, and such as the court, in view of all the circumstances of both parties at the time, should recognize and enforce?

It is a well-established rule that—"In view of the close and confidential relation existing between affianced persons, it is the duty of the prospective husband to make a full and fair disclosure of all material facts relating to the amount, character and value of his property, so that the prospective wife may have sufficient knowledge upon which she may exercise her judgment whether she will enter into such a contract. The general principal was laid down in *Kline v. Kline*, 57 Pa. St. 120, 98 Am. Dec. 206, by Judge Sharswood, and has been adopted and applied in many cases. *Pierce v. Pierce*, 71 N. Y. 154; *Lamb v. Lamb*, 130 Ind. 273; *Murdock v. Murdock*, 219 Ill. 123; *Warner v. Warner*, 235 Ill. 448; *Simpson v. Simpson's Ex'rs*, 94 Ky. 586; *Slingerland v. Slingerland*, 115 Minn. 270; *Rankin v. Schiereck*, 166 Ia. 10.

"Where the provision made for the intended wife by an antenuptial contract is grossly disproportionate to the interest in the prospective husband's estate which the intended wife would acquire by operation of law in case the marriage took place, the burden rests upon those claiming the validity of the contract to show that a full and fair disclosure was made to her before she signed it of the extent and value of the property, or that she was aware to all intents and purposes of the nature, character and value of the estate which she was relinquishing if the marriage took place. *Murdock v. Murdock, supra; Warner v. Warner, supra; Mines v. Phee*, 254 Ill. 60; *Warner's Estate*, 207 Pa. St. 580. These principles, though not universally accepted, seem to us to be based upon sound reason, and to be most consonant with the trend of judicial thought, more particularly in the western states. 14 Cyc. 940; 21, Cyc. 1250." *In re Estate of Enyart*, 100 Neb. 337, 345.

The evidence is convincing that Mrs. Stahl knew before

her marriage that Christian Stahl was a wealthy man owning farm real estate and farm personal property in the state of Nebraska. She was not informed with any degree of definiteness as to his actual possessions of personal property and its value. She was wholly uninformed as to the value of the real estate. No information as to its estimated market value was given her. She was a nonresident of the state, wholly unacquainted with farm values. Her previous life had been passed in the metropolis of the new world. She had never been beyond its boundaries. She was a total stranger to Nebraska, to Nebraska property, and to Nebraska values. As reflected by the record, she had no knowledge of the extent of the interest to which she was entitled upon marriage in her husband's property, nor was the value of that property known to her. As a stranger in a strange land, without friends save her husband and his family, far from her former home, she signed the agreement of May 1, 1902, without being accorded an opportunity for consultation with one who might advise her, and as a preliminary to receiving her wedding ring. These circumstances, in our opinion, are not sufficient to meet the requirements of the equitable rule of fair disclosure, or to charge the wife with such knowledge of the nature and value of his property as to render the contract binding upon her. On this point the appellees have not sustained the burden of proof. *Murdock v. Murdock, supra; Warner v. Warner, supra; Mines v. Phee, supra; In re Estate of Enyart,* 100 Neb. 337, 346.

This contract of May 1, 1902, provides: "In the event said Theresa Keller shall survive Christian Stahl, she shall receive the sum of $2,000, and no more, which shall be in lieu of all estate of dower, homestead, or other interest or estate, and of all other claims for allowance, maintenance or other claims against the property of Christian Stahl, * * * to which she might be entitled by reason of her marriage." The value of Christian Stahl's properties, real and personal, owned by him at the time of his death, is not set forth in the record with the required definiteness.

Stahl v. Stahl.

We feel, however, that a finding that he was worth at the time of the marriage from $18,000 to $20,000 is fairly supported by the record. It is to be remembered that, though this property was situated in a western state which was then in course of settlement and development, subject to fluctuations, the curve of value was ever upward, and this fact should not be forgotten in considering the evidence in this case. In light of the evidence in the record, therefore, the provision of $2,000 contained in said contract for the benefit of his intended wife was so grossly disproportionate to the wealth of Stahl as to require those asserting the validity of the contract to sustain the burden of proof that it was entered into with full knowledge on part of the plaintiff of the nature, extent, character, and value of the Stahl estate. Without this knowledge she could form no adequate idea of the problem before her, whether it was better to marry for a home and a pittance, or refuse to marry unless provision were made appropriate to her condition in life, as the wife of a man of wealth and standing in the community in which they resided. We are satisfied that this burden has not been met, and for the reasons stated the contract of May 1, 1902, must be held to be invalid and of no force and effect. *In re Estate of Enyart,* 100 Neb. 337.

As the defense tendered by the defendants to plaintiff's petition was wholly based upon the validity of this contract, it follows that plaintiff's petition for partition should have been sustained by the district court, and decree entered therein as prayed. The district court therefore erred in sustaining the validity of the antenuptial contract of May 1, 1902, and in entering the judgment dismissing plaintiff's action.

It is therefore ordered that the decree thus entered by the district court in this case be reversed and the cause be remanded, with directions to enter decree of partition as prayed for by plaintiff.

REVERSED.